[No. 22365-5-III.   Division Three.   March 30, 2004.]

WASHINGTON PUBLIC TRUST ADVOCATES, *Appellant*, v. THE CITY OF SPOKANE, ET AL., *Respondents*.

*Stephen K. Eugster* (of *Eugster Law Offices, P.S.C.*), for appellant.

*Michael Connelly, City Attorney*, and *Milton G. Rowland, Assistant*, for respondents.

BROWN, C.J. — This dispute between Washington Public Trust Advocates (WPTA) and the City of Spokane, Spokane City Council (Council), the mayor of Spokane (Mayor), and the Spokane city attorney (City Attorney) concerns who, between the Mayor and the Council, controls the litigation related to the Spokane River Park Square (RPS) parking improvements. The trial court dismissed all claims, essentially declaring the Mayor properly exercised his administrative and executive powers under the Spokane City Charter (Charter) in balance with the council's legislative powers when appointing special counsel with Council approval and in managing litigation.

We agree the Charter does not preclude the appointment of the special counsel who had previously made campaign contributions to the Mayor's campaign committee. Regarding the interplay between the Mayor, the special counsel, and the Council, we hold no violation of the Charter, the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, or any identified separation of powers principle exists. Accordingly, we affirm.

## FACTS

In 1999, Spokane voters amended the Charter, replacing the council-manager form of government with an elected strong-mayor system. In the ensuing mayoral election, attorney Laurel Siddoway contributed to the Committee to Elect John Powers, Jr., and guaranteed a line of credit to the Committee. The Committee was an independent organization, and Ms. Siddoway's contributions complied with Public Disclosure Commission standards. In November 2000, Mr. Powers was elected.

In January 2001, Mayor Powers, with the Council's approval, appointed Ms. Siddoway as special counsel, to assist the City in the RPS litigation and other related matters, as directed by the Mayor. The City contracted with Ms. Siddoway's law firm, Randall and Danskin, P.S. Ms. Siddoway, after consulting with the Mayor, dismissed some

state court claims the City had filed in the RPS litigation and refiled most of the claims in federal court. She regularly informed the Council of the litigation's progress. Stephen K. Eugster, as a member of the Council, disagreed with Ms. Siddoway's handling of the RPS litigation and believed Ms. Siddoway should seek prior Council approval of litigation decisions rather than taking direction from the Mayor.

In 2001, the City Attorney issued two opinions regarding Charter authority of the Mayor and the Council over litigation involving the City. The City Attorney opined the Council, in its legislative capacity, could "order litigation commenced" and "approve the settlement of lawsuits and claims." The Mayor, in his administrative capacity, could "initiate litigation" with the "responsibility for making decisions regarding the management and progress of litigation" with the help of the "City Attorney and/or Special Counsel." Clerk's Papers (CP) at 27.

In November 2001, Mr. Eugster proposed Resolution 2001-114 to the Council. Basically, it provided the Mayor did not have the authority to appoint Ms. Siddoway as special counsel; solely the Council had the authority to prosecute litigation involving the City; and the prosecution of the RPS litigation violated Washington's OPMA. Further, Mr. Eugster's resolution sought to have the Council direct RICO[1] claims against the RPS defendants and control Ms. Siddoway's RPS litigation decisions. The Council rejected the proposed resolution four to three.

WPTA, a nonprofit corporation formed by Mr. Eugster alleging taxpayer status, then filed this declaratory action. WPTA alleged the Mayor and special counsel's conduct regarding the RPS litigation violated OPMA and the Council's authority to control litigation. The suit alleged Ms. Siddoway's litigation actions were void and her appointment as special counsel violated Spokane Charter section 36.

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

By Resolution 2002-11 and a later clarifying resolution, the City renewed its contract with Randall and Danskin, P.S. The vote was by Council majority.

In January 2003, the trial court dismissed WPTA's case. The court concluded the Mayor had the authority to initiate and make decisions regarding litigation involving the City, subject to the Council's power to withdraw funds for litigation and to approve settlements; that Charter section 36 did not disqualify campaign contributors to a mayoral election committee from entering into contracts with the City; and that decisions the Mayor and special counsel had made regarding RPS litigation did not violate OPMA. WPTA initially appealed directly to the Supreme Court. The Supreme Court transferred this case to this appellate court in September 2003.

## ANALYSIS

### A. Preliminary Matters

Preliminarily, the City asks us to decide WPTA lacks standing on any Charter based issues, and, additionally, declare all claims nonjusticiable.

■ "To have standing, a party must show a real interest in the subject matter of the lawsuit, that is, a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted." *Primark, Inc. v. Burien Gardens Assocs.*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992). In other words, a plaintiff must have a personal stake in the outcome of a case. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 584, 5 P.3d 730 (2000). WPTA's stake in the outcome of this case is obscure.

■ A plaintiff must also present a justiciable controversy. A justiciable controversy is: (1) an actual, present, and existing dispute; (2) between parties having genuine and opposing interests; (3) that involves interests that are direct and substantial, rather than potential, theoretical,

abstract, or academic; and (4) a judicial determination will be final and conclusive. *Wash. Educ. Ass'n v. Pub. Disclosure Comm'n*, 150 Wn.2d 612, 622-23, 80 P.3d 608 (2003).

■■ Regarding standing and justiciability, the City did not cross-appeal the trial court's failure to decide these issues. Thus, we may consider the City's arguments as urging additional grounds to affirm the trial court. *See In re Arbitration of Doyle*, 93 Wn. App. 120, 127, 966 P.2d 1279 (1998) (distinguishing affirmative relief and urging additional grounds to affirm). As explained below, no additional grounds are necessary. Finally, the City did not provide a record of the trial court's consideration of the issues for us to review. If the record is insufficient for review, we may decline review of a particular issue. *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

■ We note the City argues no justiciable controversy exists because a Council majority and the Mayor agree regarding litigation control, rendering any decision on this topic advisory. Essentially, the City asserts the matter is moot because no controversy exists between a Council majority and the Mayor. However, this dispute involves a matter of public concern worthy of discussion relating to the trial court's decision. *See Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984) (appellate court may decide a moot matter if it is a matter of continuing and substantial public interest). Given all, in sum, we decline to resolve this case solely based on mootness, standing, or justiciability, preferring instead to review the trial court's resolution.

### B. Special Counsel's Prior Campaign Contribution

The issue is whether, under City Charter section 36, the trial court erred in concluding the special counsel contract with the City was not void in light of Ms. Siddoway's prior financial contributions to Mayor Powers' election committee.

■ In its declaratory judgment, the trial court ruled "[c]ampaign contributors to a mayoral or councilmanic [sic]

election campaign are not thereby disqualified by Spokane City Charter Article 36 from entering into contracts with the City of Spokane." CP at 312. We review declaratory judgments de novo. *In re Estate of Gardner*, 103 Wn. App. 557, 561, 13 P.3d 655 (2000).

■ The Mayor, upon Council approval, may employ special counsel. Spokane City Charter § 33. No officer of the City who has the power "to perform an official act . . . related to a contract . . . which is or may be the subject of an official act or action of the city" shall have solicited or accepted "a present or future gift . . . or other thing of value from . . . any person involved in a contract . . . with the City of Spokane." Spokane City Charter § 36(b)(2).

Here, Mayor Powers, an officer of the City, did not solicit or accept money from Ms. Siddoway. Rather, Ms. Siddoway contributed to the Committee to Elect John Powers, Jr., an independent entity. WPTA does not deny the Committee's existence or contest its functioning as an independent entity. Mayor Powers was never a member of Ms. Siddoway's law firm, so he received no financial benefit from the special counsel contract. *Compare Eugster v. City of Spokane*, 115 Wn. App. 740, 749, 63 P.3d 841 (2003), where we held the city council could not approve a contract with Mr. Eugster's law firm from which Mr. Eugster would benefit.

Accordingly, the trial court properly concluded the Spokane City Charter does not preclude a party who contributes to a mayoral candidate's independent campaign committee from later executing a contract with the City.

## C. Litigation Control

The broad issue is whether the trial court erred in interpreting the Spokane City Charter to permit the Mayor to control the RPS litigation. The narrow issue is whether the court erred by ruling, "the Mayor of Spokane has the authority to make all decisions related to the conduct of

litigation, subject to the authority of a majority (or super-majority) of the Spokane City Council to withdraw funding, or to direct the initiation or termination of lawsuits, and subject to the approval of the Spokane City Council of any settlement requiring the payment of funds by the City of Spokane." CP at 312.

Relying upon a 1997 Attorney General Opinion, WPTA contends the Council must initiate and control litigation as legislative acts. 1997 Op. Att'y Gen. No. 7, at 2-4 (AGO opinion). However, this opinion merely reasons whether a mayor or city council has the authority to select a city attorney depends on the terms of the city charter. The opinion emphasizes that under the mayor-council form of government, "the mayor and the city council will act together on behalf of the city." *Id*. at 4. The AGO opinion does not support WPTA's claim that the Council alone controls litigation.

■■ WPTA contends an action is legislative if it costs money or needs careful consideration. An action is legislative if it declares or prescribes a new law, policy, or plan, but is administrative if it merely executes or pursues a plan already adopted by the legislative body. *Ruano v. Spellman*, 81 Wn.2d 820, 823-24, 505 P.2d 447 (1973) (citing *People v. City of Centralia*, 1 Ill. App. 2d 228, 117 N.E.2d 410, 413 (1953); *Heider v. Common Council of City of Wauwatosa*, 37 Wis. 2d 466, 155 N.W.2d 17, 21 (1967)). While the decision to undertake a major public project like downtown renovation is legislative, initiating and prosecuting litigation to determine specific rights, liabilities, and responsibilities concerning a particular project or city ordinance, such as the case here, are administrative decisions. *Ruano*, 81 Wn.2d at 825.

■ Next, WPTA contends the Council's express power to settle and pay claims brought against the City necessarily implies the Council's exclusive power to initiate and control all litigation involving the City. *See* Spokane City Charter § 115. However, the Charter expressly allows the Mayor to appoint and remove the City Attorney and special counsel, to faithfully enforce the law and maintain order, to

investigate City contract performance, and to approve for payment and submit claims to the Council. Spokane City Charter §§ 24(3), (4), (10), (15), (16), (18), and 33. The Charter requires the Mayor to assume all the duties and responsibilities previously held by the City manager, which expressly included the authority to initiate litigation. *Compare* Spokane City Charter § 40 and former § 24(a). Charter section 4 provides all power of the City, unless provided for in the Charter, shall be exercised both by the Mayor and the Council, rather than residual powers being vested in one or the other.

Considering the Charter as a whole, the Mayor's powers include initiating and managing litigation, while reserving settlement and payment powers to the Council. The cases from other jurisdictions upon which WPTA relies are distinguishable because they do not concern the mayor-council system of government, or because they concern charters that either expressly reserve all residual power to the Council or employ significantly different language than employed in the Spokane City Charter.[2]

Council "approval" of legal proceedings instituted by the Mayor does not strictly require "prior approval" of each decision in the prosecution of a suit. *See* RCW 35A.12.100 (providing the mayor is the chief executive and administrative officer of the city who may institute and prosecute legal proceedings in the name of the city regarding city contracts and agreements, subject to council majority approval). At

---

[2] *See Shaw v. Commoncouncil of City of Watertown*, 75 S.D. 241, 63 N.W.2d 252, 254 (1954) (state statutes prescribing powers of mayor and council intended to vest all powers of municipality, other than those expressly delegated, to council); *Nottingham v. City of Yukon*, 1988 OK 130, 766 P.2d 973, 974 (council-manager form of government in which all power resides with the legislature); *Halverson v. Williams*, 38 S.D. 176, 160 N.W. 730, 731 (1916) (right to prosecute or defend litigation rested solely with council); *People ex rel. Altorfer v. City of Peoria*, 378 Ill. 572, 39 N.E.2d 42, 44 (1941) (council could override mayor and force the dismissal of an appeal filed by the mayor at its direction); *Harris v. DeSoto*, 80 Haw. 425, 911 P.2d 60 (1996) (under balanced charter, council controlled settlement of suits against city for money and mayor controlled resolution of suits in equity because settlement authority should follow authority over substantive issue); *City of Alexandria v. Lanier*, 446 So. 2d 547, 551 (La. Ct. App. 1984) (charter reserved all residual powers to council, leaving the mayor only those powers expressly delegated).

any one time according to the City Attorney, the City may be involved in a hundred suits besides the RPS litigation. Given litigation time constraints, the variety and complexity of issues, and the need for client and work product confidentiality, prior Council approval of all decisions in these suits would be impractical. WPTA's contrary arguments based upon the Rules of Professional Conduct are unpersuasive.

### D. Alleged OPMA Violations

The issue is whether the trial court erred in concluding no violation of the Washington Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, occurred when litigation conferences were privately conducted between the Mayor and special counsel.

■ "All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise noted in this chapter." RCW 42.30.030. "Any action taken at meetings failing to comply [with OPMA] shall be null and void." RCW 42-.30.060(1). To support an OPMA claim, the plaintiff must produce evidence showing (1) members of a governing body (2) held a meeting of that body (3) where that body took action in violation of OPMA, and (4) the members of that body had knowledge that the meeting violated the statute. *Eugster v. City of Spokane*, 118 Wn. App. 383, 424, 76 P.3d 741 (2003) (citing *Eugster v. City of Spokane*, 110 Wn. App. 212, 222, 39 P.3d 380, *review denied*, 147 Wn.2d 1021 (2002)).

■ In the context of WPTA's OPMA arguments we do not view a meeting of the Mayor and special counsel as coming within the definition of "public agency" or "governing body" under the act. *See* RCW 42.30.020(1), (2); *Cathcart v. Andersen*, 85 Wn.2d 102, 106-07, 530 P.2d 313 (1975) (governing body is a policy- or rule-making body). Assuming OPMA applies for the sake of argument, the act

permits executive sessions for governing bodies when discussing litigation or potential litigation if public knowledge regarding the discussion is likely to result in adverse legal or financial consequences. RCW 42.30.110(1)(i).

Given the frequency, complexity, magnitude and risks of adverse legal or financial consequences for the City brewing in the RPS litigation, Council executive sessions to discuss the RPS litigation would be unsurprising. Similarly, the Mayor's litigation management role requires the privacy and confidentiality of the attorney-client relationship for the City's benefit. The record supports the conclusion that the Mayor and the Council, with the assistance of the special counsel and the City Attorney, have respectively worked within the legal framework of the Charter and the OPMA to discharge their coordinate executive-administrative and legislative responsibilities. The trial court did not err in declaring no OPMA violations occurred.

Affirmed.

SWEENEY and KURTZ, JJ., concur.