156 P.3d 912 (2007)
Stephen K. EUGSTER, Appellant
v.
CITY OF SPOKANE, a Washington first class charter city, Respondent.
No. 24472-5-III.
Court of Appeals of Washington, Division 3.
February 15, 2007.
Publication Ordered April 24, 2007.
*914 Stephen Kerr Eugster, Spokane, WA, pro se.
Milton G. Rowland, Foster Pepper PLLC, Spokane, WA, for Respondent.
SWEENEY, C.J.
¶ 1 This is the latest of a series of lawsuits arising from the River Park Square garage project in Spokane, Washington. Stephen K. Eugster sued the City of Spokane (City) to challenge the legality of several aspects of the settlement between the City and developers.
¶ 2 The trial court granted the City's motion for summary judgment based on the undisputed facts, plain statutory language, and well-settled common law. Mr. Eugster is appealing three of the court's rulings. We affirm. On our own, we also award the City its attorney fees and costs for responding to Mr. Eugster's appeal because we conclude it is frivolous.

FACTS
¶ 3 In 1997, the Spokane City Council committed its support to the development of River Park Square, a downtown retail mall. As part of the project, the City arranged financing for the parking garage. The financing scheme for the garage was complex and eventually collapsed resulting in a plethora of lawsuits. We set out only those facts essential to the issues presented here. A more complete recitation of the facts is set out in our opinion in Eugster v. City of Spokane, 118 Wash.App. 383, 76 P.3d 741 (2003).
¶ 4 As part of the scheme, the City borrowed $22,650,000 from the United States Department of Housing and Urban Development (HUD) against Spokane's future HUD Community Development Block Grant funds. The City loaned this money to a developer.[1] The developer was to repay the debt from garage revenues. But the loan agreement provided that, if garage revenues fell short, the City would absorb the loss and make up the shortfall from its general parking revenues.
¶ 5 The garage revenues fell short. And the developer demanded the promised parking meter funds. The City resisted. It claimed that the developer's experts gave highly inflated forecasts of garage revenues based on imaginary numbers. Mr. Eugster was a plaintiff in a successful mandamus action to force the City to turn over the parking meter funds. See Eugster, 118 Wash.App. 383, 76 P.3d 741. Those funds were placed in escrow with the superior court and were released as part of the settlement agreement. Mr. Eugster challenges the transfer of the funds from the parking meter fund to the escrow account.
¶ 6 The City issued bonds to buy the garage from the developer. The City was to receive title once the bonds were paid off. A group of bondholders bought the bonds. But the market value of the garage turned out to be a fraction of the price the City paid, and the bonds lost value. A multitude of lawsuits were filed in both state and federal courts.[2]
*915 ¶ 7 The City and the developer eventually reached a global settlement under the guidance of the courts. Two key elements of the settlement were specifically ordered by the court. One, in a single pass-through transaction, the City was to receive title to the garage from the current holder and quitclaim it immediately to the developer. Two, the City was to release to the developer the funds from the escrow account. The City and the developer executed a settlement agreement and performed on it.
¶ 8 Mr. Eugster filed this action in the superior court challenging the legality of the settlement. Among other objections, Mr. Eugster raised statutory and constitutional objections to the release of the parking meter funds and the pass-through transfer of the title. Both the City and Mr. Eugster moved for summary judgment. Neither side disputed the material facts; each asserted the right to judgment as a matter of law.
¶ 9 The City asked the superior court to impose CR 11 sanctions against Mr. Eugster. The City alleged the complaint was frivolous because Mr. Eugster knew the disputed settlement terms were court ordered. Mr. Eugster had, in fact, been a party to the successful suit to force the City to turn over the funds. And he had not opposed the court order in that case. Mr. Eugster characterized the CR 11 motion as a retaliatory action prohibited by the anti-SLAPP[3] statute, RCW 4.24.510.[4] This statute protects citizens who provide information to government agencies by providing a defense from retaliatory lawsuits. It provides attorney fees and a statutory penalty if the citizen prevails on the defense. The trial court granted the City's motion for summary judgment but indicated informally that it was disinclined to characterize Mr. Eugster's action as frivolous. The City withdrew its CR 11 motion. But Mr. Eugster requested the statutory fees and a penalty. The trial court rejected Mr. Eugster's anti-SLAPP claim.

DISCUSSION
¶ 10 Mr. Eugster contends on appeal that the court-ordered transfer of parking meter funds and the court-ordered title pass-through transaction violated the state auditor statute, RCW 43.09.210. This statute requires cities to apply generally accepted accounting principles to interdepartmental transfers of assets. Here, as part of the settlement, parking funds were transferred to a City parking authority. Mr. Eugster also contends the pass-through of title violated the off-street parking facilities act, RCW 35.86.030. It prohibits disposal of garage property only if the council determines by ordinance that the garage is no longer necessary. Mr. Eugster also appeals the rejection of his anti-SLAPP claim.
AUDITOR STATUTE CLAIM
¶ 11 A party is entitled to summary judgment when there is no genuine issue of material *916 fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Reid v. Dalton, 124 Wash.App. 113, 120, 100 P.3d 349 (2004); Sane Transit v. Sound Transit, 151 Wash.2d 60, 68, 85 P.3d 346 (2004). The material facts here are not in dispute. We review the matters of law de novo. Reid, 124 Wash.App. at 120, 100 P.3d 349.
¶ 12 Mr. Eugster contends that the City parking meter fund disbursed assets without receiving anything in return. He contends this violates RCW 43.09.210. Mr. Eugster contends the statute requires that every transfer of assets out of a city department must be balanced by a corresponding transfer of assets in. The City raises a number of procedural bars to Mr. Eugster's auditor statute claim.
¶ 13 First, the City challenges Mr. Eugster's standing. The City contends the auditor statute does not create a private right of action. In his complaint, Mr. Eugster did not assert individual standing under the auditor statute. He asserted standing under the off-street parking facilities act, chapter 35.86 RCW, and as a taxpayer.[5] Mr. Eugster did not address the City's chapter 43.09 RCW standing issue in his reply brief to this court. At oral argument, Mr. Eugster asserted taxpayer standing.
¶ 14 Mr. Eugster did not show taxpayer standing. Ordinarily, an individual taxpayer must show special injury in order to sue a municipality. Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7-8, 802 P.2d 784 (1991). But every taxpayer is presumed injured if the city acts illegally. Kightlinger v. Pub. Util. Dist. No. 1, 119 Wash.App. 501, 506, 81 P.3d 876 (2003). However, taxpayers must first request the appropriate government entity-here, the attorney general-take action on their behalf. Id. at 508, 81 P.3d 876 (citing City of Tacoma v. O'Brien, 85 Wash.2d 266, 269, 534 P.2d 114 (1975)). Alternatively, the taxpayer may show that a request for government action would be useless. Wash. Pub. Trust Advocates v. City of Spokane, 117 Wash.App. 178, 182, 69 P.3d 351 (2003).
¶ 15 Neither does Mr. Eugster have individual standing to sue under the auditor statute. Chapter 43.09 RCW creates a state auditor to monitor government agencies and enforce the act's provisions. It does not create a right for an individual taxpayer to haul a city into court to defend every transaction and accounting entry. All judicial enforcement is by the attorney general. Again, the taxpayer can sue under the auditor statute only after the attorney general has declined the taxpayer's request to sue.
¶ 16 Mr. Eugster did not submit his complaint to the attorney general. Rather, he filed a complaint, then invited the attorney general to join as a co-plaintiff. The tone of Mr. Eugster's letter to the attorney general suggests that he did not believe the attorney general's office would have agreed to file its own action. But, without a request and a refusal, the statutory prerequisite for individual standing is not met.
¶ 17 The City also asserts that Mr. Eugster is estopped from complaining about the release of parking meter funds because he was a party to the mandamus suit that resulted in the court order to release these funds.
¶ 18 The doctrine of collateral estoppel is well established in Washington law. It is a way to prevent endless relitigation of disputes that have already been litigated by the parties and decided by the court. "`Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties.'" Hadley v. Maxwell, 144 Wash.2d 306, 311, 27 P.3d 600 (2001) (quoting Reninger v. Dep't of Corr., 134 Wash.2d 437, 449, 951 P.2d 782 (1998)). Collateral estoppel requires: "`(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.'" Id. (internal quotation marks omitted) *917 (quoting Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wash.2d 413, 418, 780 P.2d 1282 (1989)).
¶ 19 Mr. Eugster is silent on the City's assertion that the City was forced to turn over the parking meter funds by a lawsuit to which he was a party. The order approving release of the funds bears Mr. Eugster's name as the only plaintiff. Clerk's Papers (CP) at 288. Mr. Eugster needed to address this to avoid summary judgment.
¶ 20 CR 19 requires joinder of a party with an interest relating to the subject of the action where disposition in the party's absence may impair the party's ability to protect its interest in the litigation. Dep't of Corr. v. City of Kennewick, 86 Wash.App. 521, 531, 937 P.2d 1119 (1997).
¶ 21 The City contends that all parties to the settlement agreement should have been joined. All have already fully performed and have interests at stake. Therefore, all parties to the settlement are necessary parties to this litigation. Moreover, the City points out that these essential parties were before the court in the earlier mandamus litigation.
¶ 22 Again, Mr. Eugster does not respond to the City's contention that he failed to join necessary parties. The sole defendant named in this lawsuit is the City of Spokane. The interests of the other parties to the settlement were not represented.
¶ 23 But Mr. Eugster plainly cannot succeed on the merits of his auditor statute claim. He was required to respond to the City's summary judgment motion with more than the allegations he set forth in his pleadings. Mr. Eugster needed to set forth specific facts establishing a genuine issue for trial. CR 56(e); Tiffany Family Trust Corp. v. City of Kent, 155 Wash.2d 225, 230, 119 P.3d 325 (2005). Mr. Eugster provided no evidence to support his claims of accounting irregularities. This record does not show how the disputed assets were entered on the City's books. Mr. Eugster presented neither expert nor lay testimony as to what the approved accounting methods are when a City transfers or releases an asset to satisfy a judgment or court order, or why the City's accounting practices were objectionable. Mr. Eugster does not dispute the City's power to settle claims and release assets to pay judgments. See, e.g., Medina v. Pub. Util. Dist. No. 1, 147 Wash.2d 303, 310, 53 P.3d 993 (2002). He does not support his assertion that generally accepted accounting principals require every debit entry to be balanced by a corresponding credit.
CHAPTER 35.86 RCW
¶ 24 Mr. Eugster contends that the City acquired the River Park Square garage pursuant to the off-street parking facilities statute, chapter 35.86 RCW. Therefore, he contends, the City may dispose of title to the garage solely as provided by this statute. And RCW 35.86.030 permits cities to dispose of garage property only when the council has determined by ordinance that the property is no longer necessary for parking purposes. RCW 35.86.210. Mr. Eugster contends that the garage is still necessary for parking purposes, and will be for the foreseeable future. He therefore concludes that the City could not possibly comply with chapter 35.86 RCW and was barred from divesting itself of ownership of the garage.
¶ 25 The City responds that chapter 35.86 RCW does not apply because it did not acquire the garage pursuant the statute. The City was obeying a court order. The City argues that by the order it was deemed to hold title for a fleeting instant before immediately transferring it. Moreover, the city council satisfied RCW 35.86.030 by including in the ordinance factual findings that city ownership of the River Park Square garage was no longer necessary.
¶ 26 Whether a statute applies to a particular set of facts is a question of law that we review de novo. State v. Dearbone, 125 Wash.2d 173, 178-79, 883 P.2d 303 (1994) (quoting State v. Tatum, 74 Wash.App. 81, 86, 871 P.2d 1123 (1994)).
¶ 27 RCW 35.86.030 applies to parking property obtained "by lease, purchase, donation and/or gift, or by eminent domain." For purposes of the settlement, the property at issue here was "obtained" by a court order that the City assume and immediately transfer *918 legal title, not for parking purposes but to resolve complex litigation.
¶ 28 The statute's purpose is simply to authorize cities to provide parking facilities. RCW 35.86.010. Nothing in RCW 35.86.030 suggests a legislative intent to prohibit cities from turning parking facilities over to private hands if the city council lawfully passes an ordinance declaring that city ownership no longer serves the city's interests. The City passed ordinance C33565, which does that. Again, the statute was not a bar to complying with the order of the court.
¶ 29 Mr. Eugster contends that the settlement constituted a gift of public funds in violation of Washington Constitution article VIII, section 7. He characterizes it as a gratuitous expenditure of public funds for which the City received no consideration.
¶ 30 The City responds that the settlement of disputes is sufficient consideration for a compromise settlement.
¶ 31 Sufficiency of consideration is a question of law that may be decided by summary judgment. Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 195, 840 P.2d 851 (1992).
¶ 32 Municipalities own and operate their public utilities in a proprietary rather than governmental capacity. Scott Paper Co. v. City of Anacortes, 90 Wash.2d 19, 28, 578 P.2d 1292 (1978) (citing 12 E. McQUILLIN, MUNICIPAL CORPORATIONS § 35.35, at 465 (3d ed.1966)). Contract law applies. Id.
¶ 33 "A good faith settlement of a dispute has been held to be sufficient consideration for a compromise to settle that claim." Watson, 120 Wash.2d at 195, 840 P.2d 851. The consideration for the City's performance of its obligations was settlement and compromise of all claims. CP at 284 (federal order). The constitution is not implicated absent donative intent. Scott Paper, 90 Wash.2d at 33, 578 P.2d 1292. Mr. Eugster does not deny that the City benefited from the settlement. There was, then, no gift.
ANTI-SLAPP CLAIM
¶ 34 Mr. Eugster contends that a court is a government agency such that filing a complaint in the superior court constitutes communication of a complaint or information as contemplated by RCW 4.24.510. Mr. Eugster therefore contends that the City's motion for CR 11 sanctions alleging his complaint was frivolous entitled him to attorney fees for defending the CR 11 motion and damages under RCW 4.24.510.
¶ 35 The City responds that the anti-SLAPP statute does not apply by its plain language. RCW 4.24.510 provides remedies to people who have communicated matters of reasonable concern to government agencies if they prevail in an action against them using the statute as a defense. The City argues that filing a lawsuit lacking any basis in law or fact is not communicating a matter of reasonable concern. And the anti-SLAPP statute does not preclude the City from asking the court for relief from frivolous litigation. Moreover, the City notes that it voluntarily dismissed its CR 11 claim.
¶ 36 We review the trial court's interpretation and application of the anti-SLAPP statute, RCW 4.24.510, de novo. Emmerson v. Weilep, 126 Wash.App. 930, 935, 110 P.3d 214, review denied, 155 Wash.2d 1026, 126 P.3d 820 (2005).
¶ 37 Mr. Eugster mischaracterizes the City's motion for CR 11 sanctions as a strategic lawsuit against public participation (SLAPP). The so-called anti-SLAPP statute provides for attorney fees and a $10,000 sanction when a person has to defend against a claim of civil liability based on a complaint. RCW 4.24.510. To satisfy the statute's requirements, a person must in good faith complain or provide information to a government agency about a matter reasonably of concern to the agency. The adverse claim must be on a substantive issue. Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council, 146 Wash.2d 370, 382, 46 P.3d 789 (2002); Weilep, 126 Wash.App. at 936, 110 P.3d 214.
¶ 38 The CR 11 motion was not a claim on a substantive issue. This court has held in a previous case to which Mr. Eugster was a *919 party that RCW 4.24.510 does not preclude the court from considering a defense motion for relief from the costs of defending frivolous litigation. Reid, 124 Wash.App. 113, 100 P.3d 349.
¶ 39 Moreover, Mr. Eugster was both lawyer and client in this lawsuit. The City's CR 11 motion was filed against the lawyer. The rule authorizes sanctions against a person who signs a frivolous pleading. The allegedly frivolous pleading here was the complaint. The complaint was not signed by the plaintiff; it was signed by "Attorney for Plaintiff," Steven K. Eugster, an officer of the court. CP at 2, 25. Mr. Eugster cites no authority for the proposition that RCW 4.24.510 insulates attorneys from CR 11 sanctions simply because their clients are suing the government.
¶ 40 We conclude that the court properly dismissed Mr. Eugster's RCW 4.24.510 motion. The anti-SLAPP statute does not divest the court of the power of sanctions when appropriate to the orderly conduct of proceedings.
ATTORNEY FEES ON APPEAL
¶ 41 RAP 18.9(a) permits this court, on its own motion, to require a party to pay the fees of another party for defending a frivolous appeal. Fay v. Nw. Airlines, Inc., 115 Wash.2d 194, 200-01, 796 P.2d 412 (1990). Pursuing a frivolous appeal justifies the imposition of terms and compensatory damages. Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd., 107 Wash.2d 427, 442-43, 730 P.2d 653 (1986) (quoting Boyles v. Dep't of Ret. Sys., 105 Wash.2d 499, 509, 716 P.2d 869 (1983) (Utter, J., concurring in part, dissenting in part)); Pearson v. Schubach, 52 Wash.App. 716, 725-26, 763 P.2d 834 (1988). An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal. Green River, 107 Wash.2d at 442-43, 730 P.2d 653 (quoting Boyles, 105 Wash.2d at 509, 716 P.2d 869 (Utter, J., concurring in part, dissenting in part)).
¶ 42 This court is persuaded that Mr. Eugster's action was frivolous from the outset. The City is, then, entitled to its attorney fees and costs for responding to this appeal. It is so ordered.
¶ 43 We affirm the superior court's order granting summary judgment to the City and order Mr. Eugster to pay the City's reasonable attorney fees on appeal subject to RAP 18.1(d).
WE CONCUR: BROWN and KULIK, JJ.
NOTES
[1] Actually, to the Cowles Publishing Company. Clerk's Papers (CP) at 285. We use the term "developer" loosely. The developer was a group of Cowles' affiliates. Id. Cowles acquired a legal interest as guarantor of a promissory note. Id. at 203.
[2] These cases were appealed to this court: Eugster v. City of Spokane, 121 Wash.App. 799, 91 P.3d 117 (2004), review denied, 153 Wash.2d 1012, 106 P.3d 762 (2005); Spokane Research & Def. Fund v. City of Spokane, 121 Wash.App. 584, 89 P.3d 319 (2004), rev'd & remanded, 155 Wash.2d 89, 117 P.3d 1117 (2005); Wash. Pub. Trust Advocates v. City of Spokane, 120 Wash. App. 892, 86 P.3d 835 (2004); Eugster v. City of Spokane, 118 Wash.App. 383, 76 P.3d 741 (2003), review denied, 151 Wash.2d 1027, 94 P.3d 959 (2004); Wash. Pub. Trust Advocates v. City of Spokane, 117 Wash.App. 178, 69 P.3d 351 (2003); River Park Square, L.L.C. v. Miggins, noted at 116 Wash.App. 1020, 2003 WL 1521953 (2003); River Park Square, L.L.C. v. Miggins, 143 Wash.2d 68, 17 P.3d 1178 (2001); Spokane Research & Def. Fund v. City of Spokane, 96 Wash. App. 568, 983 P.2d 676 (1999), review denied, 140 Wash.2d 1001, 999 P.2d 1259 (2000); Priorities First v. City of Spokane, 93 Wash.App. 406, 968 P.2d 431 (1998), review denied, 137 Wash.2d 1035, 980 P.2d 1284 (1999); CLEAN v. City of Spokane, 133 Wash.2d 455, 947 P.2d 1169 (1997).
[3] Strategic lawsuits against public participation.
[4] "Communication to government agency or self-regulatory organization  Immunity from civil liability. A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." RCW 4.24.510.
[5] Mr. Eugster asserted standing also under the Open Public Meetings Act of 1971, chapter 42.30 RCW. He is not appealing any public meetings act issues.