FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAR -4 AM 10: 26



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CAROLYN BILAL, | ) | No. 67900-7-I |
| | ) | (Consolidated with No. 67800-1-I) |
| Appellant, | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| | ) | |
| BARBARA CASEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: March 4, 2013 |

APPELWICK, J. — Bilal alleges that Casey defamed her in an e-mail and testimony given in the proceedings leading to the revocation of her teaching certificate. The superior court granted Casey's motion to strike Bilal's claims, relying on Washington's anti-SLAPP statutes.[1] Bilal appeals, arguing that the court erred in striking her claims and awarding Casey statutory damages, attorney's fees, and costs. We affirm.

## FACTS

Bilal is a former certified teacher who worked for the Seattle School District (District) as a teacher, career center specialist, and youth development specialist.

In 2006, Bilal's union filed a grievance on her behalf. Sue Means, a human resources analyst for the District, prepared the District's response to the grievance. In reviewing Bilal's file, Means discovered different birth dates on

---

[1] RCW 4.24.500 – .525.

Bilal's Federal I-9 form, driver's license, and insurance enrollment forms. The District commenced an investigation in which Means participated. The investigation uncovered multiple instances of deception on Bilal's part, including false information regarding her criminal history, employment history, education history, and dates of jury service.

In 2007, the District terminated Bilal's employment and notified the Office of the Superintendent of Public Instruction (OSPI) of her firing. OSPI then initiated its own investigation to determine whether Bilal's teaching certificate should be revoked.

In August 2008, Means contacted Barbara Casey, an assistant principal at the school where Bilal had worked as a career counselor. Means asked Casey to review a copy of a letter of recommendation Casey had submitted on Bilal's behalf in 2006. Casey concluded that the letter had been "extensively altered." She alleged she provided the recommendation letter and an envelope to Bilal, not directly to the recipient, because Bilal said she needed the letter that day. Casey did not make a copy of the letter. Means forwarded this information to OSPI.

On December 23, 2009, OSPI issued an order revoking Bilal's teaching certificate. Bilal appealed. Following a hearing at which Casey and other witnesses testified, an administrative law judge upheld the revocation. The judge found that the letter of recommendation had not been altered, but that Bilal had

No. 67900-7-I /3

made deliberate misrepresentations regarding her identity, date of birth, employment history, criminal history, and professional qualifications. The judge concluded that Bilal could not "be entrusted to care for, supervise, or model honest conduct for the students of Washington State" and was unfit to be an educator. The superior court dismissed Bilal's appeal and this court affirmed.

In 2010, Bilal sued the District for wrongful termination and defamation. The superior court dismissed that action with prejudice. Bilal did not appeal.

In June, 2011, Bilal filed the present action against Casey for defamation. Casey moved to strike Bilal's claims, alleging that they were part of a Strategic Lawsuit Against Public Participation (anti-SLAPP) and that Casey had statutory immunity from such an action.

The superior court granted the motion to strike and awarded Casey statutory damages, attorney's fees, and costs. Bilal appeals.

### DECISION

Bilal contends the superior court misapplied the anti-SLAPP statutes and erred in granting Casey's motion to strike. We review a court's interpretation and application of the anti-SLAPP statutes de novo. Eugster v. City of Spokane, 139 Wn. App. 21, 33, 156 P.3d 912 (2007). Findings of fact are reviewed for substantial evidence. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). We hold appellants appearing pro se to the same rules of

- 3 -

procedure and substantive law as appellants represented by counsel. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

Bilal initially contends the superior court lacked authority to utilize the motion to strike procedure in RCW 4.24.525, because the statute was enacted after the alleged defamation. Because Bilal raises this contention for the first time on appeal and cites no supporting authority in her opening brief, her claim need not be considered. RAP 2.5(a); Lunsford v. Saberhagen Holdings, Inc., 139 Wn .App. 334, 338, 160 P.3d 1089 (2007), aff'd, 166 Wn.2d 264, 208 P.3d 1092 (2009); Joy v. Dep't of Labor & Indus., 170 Wn. App. 614, 629, 285 P.3d 187 (2012); King v. Rice, 146 Wn. App. 662, 673 n.30, 191 P.3d 946 (2008).

Moreover, Bilal's contention overlooks the legislature's express purpose in enacting the motion to strike procedure.[2] The legislature was "concerned about *lawsuits*" that deter participation in matters of public concern. LAWS OF 2010, ch. 118, § 1 (emphasis added). It created the motion procedure in RCW 4.24.525 to "[s]trike a balance between the rights of persons *to file lawsuits* . . . and the rights of persons to participate in matters of public concern." LAWS OF 2010, ch. 118, § 1 (emphasis added). The legislature also expressly provided that the statute is to be "applied and construed liberally to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts." LAWS OF 2010, ch. 118, § 3; Aronson v. Dog Eat Dog Films, Inc., 738 F. Supp. 2d 1104,

---

[2] RCW 4.24.525(4)(a) allows a party to "bring a special motion to strike any claim that is based on an action involving public participation and petition."

1110 (W.D. Wash. 2010). Because RCW 4.24.525 is directed at and triggered by lawsuits and because it was enacted before Bilal filed suit against Casey, the superior court did not apply it retroactively and committed no error. See State v. Pillatos, 159 Wn.2d 459, 471, 150 P.3d 1130 (2007) (a statute is not retroactive in effect merely because it applies to conduct predating its effective date; it is retroactive in effect only if the triggering event for its application occurred before its effective date).

Bilal also argues that Casey's motion to strike was untimely under RCW 4.24.525(5)(a). This argument is raised for the first time on appeal and therefore need not be considered. In addition, it ignores the permissive language of the statute, which states that a motion to strike "*may* be filed within sixty days of the service of the most recent complaint *or, in the court's discretion, at any later time upon terms it deems proper.*" Id. (emphasis added). Thus, even if Bilal had preserved this argument, her allegation that the motion to strike was filed more than 60 days after the complaint would not, without more, establish error.

Bilal next contends the court erred in granting Casey's motion to strike. A party moving to strike a claim under RCW 4.24.525(4)(a) has the initial burden of showing by a preponderance of the evidence that the claim targets protected activity—i.e., activity "involving public participation and petition" as defined in RCW 4.24.525(2). If the moving party meets this burden, the burden shifts to the responding party "to establish by clear and convincing evidence a probability of

prevailing on the claim." RCW 4.24.525(4)(b). Decisions under RCW 4.24.525(4) are to be based on the "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." RCW 5.24.525(4)(c).

Bilal argues that Casey did not carry her initial burden of showing that Casey's e-mail and testimony involved "public participation and petition." RCW 4.24.525(4)(b). Under RCW 4.24.525(2)(b), actions involving "public participation and petition" include:

> *Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding or other governmental proceeding authorized by law. . .*

(Emphasis added.)

Casey's testimony at the hearing to revoke Bilal's teaching certificate clearly comes within this subsection. The statute also encompasses Casey's e-mail to Means. It is undisputed that Casey submitted her e-mail to Means during OSPI's investigation, that OSPI's investigation was authorized by law, and that Means, a District employee involved in the earlier investigation and termination of Bilal, forwarded the e-mail to OSPI. Construing the statute liberally, and considering the undisputed facts and evidence before the superior court,[3] the trial court did not err in concluding that the e-mail was "submitted, in connection with

---

[3] Contrary to Bilal's assertions, the record contains evidence supporting the superior court's decision, including the 42-page decision of the administrative law judge and other exhibits.

an issue under consideration or review by a . . . governmental proceeding." Id. Casey thus carried her initial burden under RCW 4.24.525(4)(b).

Bilal argues alternatively that if the burden shifted to her, the court erred in concluding that she failed to demonstrate, by clear and convincing evidence, a probability of prevailing on her defamation claims. But, in order to prevail on those claims, Bilal had to prove falsity, an unprivileged communication, fault, and damages. Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). Bilal provided no evidence of damage below. Casey's e-mail and testimony could not have caused her termination since they were provided afterward. They also were not a factor in the revocation of her teaching certificate since the hearing examiner found the letter of recommendation had not been altered.

Bilal also failed to demonstrate a probability that Casey's e-mail and testimony were unprivileged. Alleged defamatory statements made in the course of a quasi-judicial administrative proceeding are absolutely privileged. Story v. Shelter Bay Co., 52 Wn. App. 334, 338, 760 P.2d 368 (1988); Patterson v. Superintendent of Pub. Instruction, 76 Wn. App. 666, 672-73, 887 P.2d 411 (1994). Because Casey testified at a quasi-judicial administrative hearing, her testimony was absolutely privileged.

Casey's e-mail to Means was also absolutely privileged. Under RCW 4.24.510, a person

> who communicates a complaint or information to any branch or
> agency of . . . state . . . government . . . is immune from civil liability

No. 67900-7-I /8

for claims based upon any matter reasonably of concern to that agency.

Casey sent her e-mail to a District employee investigating representations Bilal made about her teaching qualifications. Although the District had terminated Bilal's employment, her misrepresentations were still "reasonably of concern" to both the District and the investigating agency, OSPI, because she still had a teaching certificate. Id. Casey's e-mail was therefore absolutely privileged under the statute. See Michael E. Johnston, A Better SLAPP Trap: Washington State's Enhanced Statutory Protection for Targets of "Strategic Lawsuits Against Public Participation" 38 Gonz. L. Rev. 263, 286 (2003) (noting that even bad faith communications are immunized under RCW 4.24.510).

Casey's e-mail was also protected by a qualified "common interest" privilege. This common law privilege arises if there is a common interest in the subject matter being communicated between the declarant and the recipient. Moe v. Wise, 97 Wn. App. 950, 957-58, 989 P.2d 1148 (1999). The privilege applies to communications between employees acting in the ordinary course of their work. John Doe v. Gonzaga Univ., 143 Wn.2d 687, 701-02, 24 P.3d 390 (2001), reversed on other grounds by, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 738 (2002). Here, Casey and Means were both employees of the District. Casey's e-mail to Means responded to a work related question regarding a matter of common interest—Bilal's possible alteration of Casey's recommendation. The e-mail was therefore privileged.

- 8 -

Bilal claims that Casey abused, and therefore lost, any applicable privileges because she knowingly made false statements or acted with reckless disregard for the truth. But, only *qualified* privileges or immunities can be lost due to abuse. Bender v. City of Seattle, 99 Wn.2d 582, 600, 664 P.2d 492 (1983); Momah v. Bharti, 144 Wn. App. 731, 182 P.3d 455 (2008). As noted above, Casey's e-mail and testimony are absolutely privileged.

Finally, Bilal contends the court erred in awarding statutory damages, attorney's fees, and costs, because Casey acted in bad faith. Both RCW 4.24.510 and RCW 4.24.525(6)(a) provide for awards of costs, attorney's fees, and statutory damages of ten thousand dollars. Although RCW 4.24.510 disallows statutory damages where an immunized person acts in bad faith, neither statute contains a bad faith exception for attorney's fees and costs. Accordingly, Bilal's challenge to the court's award of attorney's fees and costs fails.

Bilal's challenge to the award of statutory damages fails, because it is inadequately briefed. The superior court awarded statutory damages "[p]ursuant to RCW 4.24.525." As noted above, RCW 4.24.525 contains no bad faith exception. Bilal, however, does not address RCW 4.24.525. Instead, she focuses solely on the bad faith exception in RCW 4.24.510. We do not consider claims that are inadequately argued. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

No. 67900-7-I /10

For the first time in her reply brief, Bilal challenges the constitutionality of the statutes at issue in this case. We do not address arguments, even constitutional arguments, raised for the first time in a reply brief. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); Oostra v. Holstine, 86 Wn. App. 536, 543, 937 P.2d 195 (1997).

Affirmed.[4]

WE CONCUR:

---

[4] Given our decision, we need not consider Casey's claim that the superior court improperly considered an administrative law judge's finding in 2007 that Bilal did not commit misconduct for purposes of unemployment benefits. We note, however, that the 2010 administrative decision upholding the revocation of Bilal's teaching certificate addressed the 2007 decision and provided the following bases to discount it:

> The findings in the unemployment appeal decision did not have the benefit of the much more extensive record in the present case. The only witnesses at the unemployment hearing were the Appellant and [the District]'s Ms. Means and Ms. Garmoe. In the present case there were 21 witnesses, and the hearing lasted five days instead of four hours. . . . It is only with the benefit of more evidence than presented at the unemployment hearing that a clearer picture emerges.

- 10 -