FILED
COURT OF APPEALS
DIVISION II

2013 DEC 17 AM 8: 50

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43172-6-II |
| Respondent, | |
| v. | |
| REX LEE POPE, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. – A jury returned verdicts finding Rex Lee Pope guilty of second degree assault and attempted theft of a motor vehicle. The jury also returned special verdicts finding the aggravating factors that Pope committed both offenses shortly after being released from incarceration. Pope appeals his convictions, asserting that (1) the trial court violated his right to present a defense by denying his continuance motion, (2) the trial court improperly commented on the evidence, (3) the trial court's substantial step definitional jury instruction relieved the State of its burden to prove the essential elements of attempted theft of a motor vehicle, and (4) defense counsel was ineffective for failing to adequately investigate his case before trial and for failing to adequately advise him about accepting a plea offer. We affirm.

## FACTS

On August 8, 2011, Laverne Hallsted parked his Toyota pickup truck at a Port Orchard, Washington park-and-ride lot and rode a commuter bus to his job at the Puget Sound Naval Shipyard in Bremerton. When Hallsted returned to the park-and-ride lot at around 4:25 PM, he saw that a door to his truck was open and that two feet were hanging out of the open door. As he

approached his truck, Hallsted saw a man, later identified as Pope, attempting to smash the truck's ignition lock with a stick. Hallsted asked Pope, "Sir, can I help you?" Report of Proceedings (Dec. 8, 2011) at 99. Pope responded, "Yes, you can," as he stood in front of Hallsted. RP (Dec. 8, 2011) at 99. Pope then looked down, grabbed Hallsted's shirt, and punched Hallsted in the face with his right hand. Hallsted responded by grabbing Pope's shirt and jabbing keys into his cheek. During the struggle, items from Pope's satchel fell to the ground. Among those items were several blister packs of medication marked with Pope's name, as well as a roll of duct tape, a notebook, a hat, an X-Acto knife, and X-Acto knife blades. Pope fled and Hallsted chased him for a short distance before calling 911.

Port Orchard Police Officer Donna Main took Hallsted's statement and summoned medical assistance to treat his injuries. The following day Hallsted identified Pope from a photographic montage as the man who had broken into his truck and assaulted him. Main arrested Pope the next day. When she arrested Pope, Main saw that Pope had scratch marks and injuries on the left side of his face. During his arrest, Pope did not appear to have any physical disability and did not have any difficulty walking, kneeling, or getting out of the patrol car.

On November 8, 2011, the State charged Pope by first amended information with second degree assault and attempted theft of a motor vehicle. The State also alleged aggravating factors that Pope committed each offense shortly after being released from incarceration and that his multiple offenses and high offender score would result in some of his offenses going unpunished.

Pope was arraigned and was appointed counsel on September 12, 2011. On November 8, Pope moved to continue the start of his trial. The trial court granted Pope's continuance motion and set his trial to commence on December 6. On December 6, Pope again moved for a

No. 43172-6-II

continuance, asserting that he was attempting to obtain medical records and to secure witnesses to testify about his Parkinson's disease. When the trial court asked about the relevance of Pope's Parkinson's disease, defense counsel stated:

> Your Honor, there's an allegation in part of this case regarding an alleged assault that occurred between—where Mr. Pope is the alleged offender on that. And the defense is trying to gather more information regarding his Parkinson's disease to show that Mr. Pope because of the—how far the disease has progressed at this point, that he would be unable to conduct himself in a manner that the state is alleging.

RP (Dec. 6, 2011 AM) at 4.

The State opposed Pope's continuance motion, asserting that it was not basing Pope's second degree assault charge on allegations that Pope had severely beaten the victim but, rather, that it was charging him under RCW 9A.36.021(1)(e) for assaulting the victim "with intent to commit a felony." Clerk's Papers (CP) at 1. The State argued that it was unlikely that any expert witness would testify that Pope could not commit assault in the manner alleged. The State also told the trial court that it would be willing to stipulate that Pope suffered from Parkinson's disease. The trial court denied Pope's continuance motion, noting that his trial had already been continued once for the same reason.

That same day, Pope's case was called for trial before a different trial court judge, and Pope renewed his motion to continue the start of his trial. The trial court denied Pope's continuance motion, stating:

> Well, that decision has been made. I'm not going to overrule what's already been decided this morning. There's no new information provided so far as the medical records. And I've not heard anything specific as to how it's going to relate to or be relevant to the defense, in this case, especially in light of the fact that there appears to be an acknowledgement this afternoon that there is no mental defense being sought.

RP (Dec. 6, 2011 PM) at 13. Before the start of trial, Pope requested that the trial court admit two exhibits titled, "Parkinson's Disease at a Glance," and "Symptoms by Mayo Clinic Staff." RP (Dec. 6, 2011 PM) at 32. Defense counsel stated that the purpose of the exhibits was to "have something for the jurors available to explain why Mr. Pope visibly shakes in the courtroom." RP (Dec. 6, 2011 PM) at 33. The State opposed admission of the exhibits but stated that it wasn't opposed to having the trial court instruct the jury about Pope's visible symptoms of Parkinson's disease. Following a lengthy discussion, both parties agreed that the trial court could instruct the jurors as follows, "'At Mr. Pope's request, I would like to inform you that he suffers from Parkinson's disease. This is not a fact in the case. But he has requested that this be conveyed to you so as to explain his symptoms.'" RP (Dec. 6, 2011 PM) at 43.

The following day, the trial court suggested modifying the agreed instruction to read, "'At Mr. Pope's request, I would like to inform you that Mr. Pope suffers from Parkinson's disease. This is not a fact in the case, but he has requested that this be conveyed so as to explain his visible symptoms of shaking.'" RP (Dec. 7, 2011) at 49. Defense counsel and the State agreed to the modified language in the proposed instruction, and the trial court later read the instruction to potential jurors at the start of voir dire.

At trial, Hallsted and Main testified consistently with the facts as stated above. The trial court provided the jury with an instruction stating, "A substantial step is conduct which strongly indicates a criminal purpose and which is more than mere preparation." Suppl. CP at 146. Pope did not object to this instruction. The jury returned verdicts finding Pope guilty of second degree assault and attempted theft of a motor vehicle. The jury also returned special verdicts finding the

No. 43172-6-II

aggravating factors that Pope committed both offenses shortly after being released from incarceration.

At a January 13, 2012 sentencing hearing, Pope's defense counsel moved to withdraw from representation, asserting that communications with Pope had broken down. The trial court granted defense counsel's motion to withdraw, appointed new counsel to represent Pope, and set a new sentencing hearing date. On February 24, Pope's new defense counsel informed the sentencing court that he had reviewed the trial transcript and could not find a basis to file a meritorious CrR 7.5 motion and, therefore, he was prepared to go forward with sentencing.

Pope then told the trial court that he wanted to act pro se. Following a *Faretta*[1] inquiry, the trial court found that Pope had knowingly waived his right to counsel. Pope then filed a written CrR 7.5 motion for a new trial, which motion the trial court denied on March 2. The trial court declined to impose an exceptional sentence and sentenced Pope within the standard range. Pope timely appeals.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE

Pope first contends that the trial court violated his constitutional right to present a defense by denying his motion to continue the start of trial. We disagree.

A.    *Standard of Review*

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's

---

[1] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

5

accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). However, a criminal defendant's right to present a defense is not absolute; a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

A trial court's denial of a continuance motion may infringe on a defendant's right to compulsory process and right to present a defense "if the denial prevents the defendant from presenting a witness material to his defense." *State v. Downing*, 151 Wn.2d 265, 274-75, 87 P.3d 1169 (2004). We determine whether a trial court's denial of a continuance motion violated a criminal defendant's constitutional right to present a defense on a case-by-case basis, examining "'the circumstances present in the particular case.'" *Downing*, 151 Wn.2d at 275 n. 7 (quoting *State v. Eller*, 84 Wn.2d 90, 96, 524 P.2d 242 (1974)). We review the trial court's decision to grant or deny a continuance motion for an abuse of discretion. *Downing*, 151 Wn.2d at 272. And we review de novo claims of a denial of Sixth Amendment rights, including the right to present a defense. *See e.g.*, *Jones*, 168 Wn.2d at 719; *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).

B.      *Trial Court's Continuance Ruling Did Not Violate Pope's Right To Present a Defense*

Examining the particular circumstances present here, we hold that the trial court did not violate Pope's right to present a defense. Fatal to his claim is Pope's failure to show any prejudice resulting from the trial court's denial of his continuance motion.

> [E]ven where the denial of a motion for continuance is alleged to have deprived a criminal defendant of his or her constitutional right to compulsory process, the decision to deny a continuance will be reversed only on a showing that the accused was prejudiced by the denial and/or that the result of the trial would likely have been different had the continuance not been denied.

*State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994) (citing *Eller*, 84 Wn.2d at 95-96).

First, Pope has not demonstrated that the medical records and testimony he sought to obtain for trial would have supported his contention that he could not have committed assault in the manner alleged by the State. The medical records attached to Pope's CrR 7.5 motion for a new trial merely show that Pope was diagnosed with Parkinson's disease, exhibited "jerky" and "stiff" movements, had poor coordination and balance, and had an "uncontrollable tremor in the right and to a lesser extent left hand, with some spread into the right leg." Suppl. CP at 36, 45. Nothing in the medical records showed that Pope could not commit an assault during his attempted theft of a motor vehicle, and he has not identified any expert witness that would so testify. Additionally, the trial court had already granted Pope a nearly one-month continuance to obtain the medical records he had sought. And Pope did not explain why he had been unable to obtain the records during that time when he again moved for a continuance on the first day of trial.

Finally, the outcome of Pope's trial would not likely have differed had the trial court granted him a continuance to allow him to present medical records and testimony regarding his

Parkinson's disease in light of the overwhelming evidence of his guilt. Hallsted identified Pope as his assailant in a photographic montage and at trial. Several blister packs of medication labeled with Pope's name fell from the assailant's satchel and were recovered by Main at the scene. Hallsted and Pope both had injuries consistent with Hallsted's account of the assault. And Main did not see that Pope had any apparent physical disability when she arrested him. In light of these circumstances, we hold that the trial court did not violate Pope's constitutional right to present a defense by denying his second continuance motion.

## II. JUDICIAL COMMENT

Next, Pope contends that the trial court improperly commented on the evidence in violation of article IV, section 16 of the Washington Constitution. Specifically, Pope asserts that the trial court improperly commented on the evidence when it orally instructed prospective jurors, pursuant to the parties' agreement, that "At Mr. Pope's request, I would like to inform you that Mr. Pope suffers from Parkinson's disease. This is not a fact in the case, but he has requested that this be conveyed to you so as to explain his visible symptoms of shaking." RP (Dec. 7, 2011) at 52. We disagree.

Article IV, section 16 of the Washington Constitution[2] prohibits a trial court from conveying to the jury its personal attitude toward the merits of the case and prohibits the trial court from "instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d

---

[2] Article IV, section 16 of the Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

54, 64, 935 P.2d 1321 (1997)). A jury instruction that does no more than accurately state the law pertaining to an issue does not constitute an impermissible comment on the evidence. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

Here, Pope argues that the trial court's instruction impermissibly commented on the evidence by stating that his Parkinson's disease was "not a fact in the case" because it prohibited the jurors from considering his Parkinson's disease during its deliberations. RP (Dec. 7, 2011) at 52. But the instruction's directive that Pope's Parkinson's disease was "not a fact in the case" was an accurate statement of the law because there was no evidence presented at trial regarding his Parkinson's disease. Rather, the trial court gave the instruction because Pope had requested that the jury be informed of his disease to explain why he was visibly shaking in the courtroom. Thus, consistent with the jury instructions as a whole, the trial court properly instructed the jury that it should not consider Pope's Parkinson's disease when determining whether the State proved beyond a reasonable doubt the essential elements of the charged offenses. [3]

Moreover, even if the trial court erred in giving the challenged instruction, Pope invited such error by agreeing to the instruction's language. The invited error doctrine prohibits a party from setting up an error at trial and then complaining of the error on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). Pope asserts that the invited error doctrine does not apply here because, although he had agreed that the trial court should give the instruction, he did not propose the instruction or its language. But, "[u]nder the doctrine of invited error, even

---

[3] The trial court's written jury instructions stated in part, "The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions." Suppl. CP at 133.

9

No. 43172-6-II

where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction *or agreed to its wording*." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005) (emphasis added). Here, Pope did more than merely acquiesce to the trial court giving the challenged instruction; he requested that the jury be informed about his Parkinson's disease and twice agreed to the language of the trial court's proposed instruction. Because Pope expressly agreed to the language of the instruction, the invited error doctrine prohibits him from challenging the instruction on appeal.

### III. SUBSTANTIAL STEP JURY INSTRUCTION

Next, Pope asserts that the trial court's substantial step jury instruction relieved the State of its burden to prove beyond a reasonable doubt the elements of attempted theft of a motor vehicle. As an initial matter, we must determine if this issue is properly before us. Generally, we will not address issues raised for the first time on appeal. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). And Pope did not object to the substantial step jury instruction at trial. He asserts, however, that his claimed error is of constitutional magnitude and, thus, we may review it for the first time on appeal under RAP 2.5(a)(3).[4] We disagree.

Although a trial court's failure to instruct the jury on every element of an offense is an error of constitutional magnitude under RAP 2.5(a)(3), "'any error in further defining terms used in the elements is not of constitutional magnitude.'" *State v. Gordon*, 172 Wn.2d 671, 677, 260

---

[4] RAP 2.5(a) provides in relevant part:

> **Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right.

P.3d 884 (2011) (quoting *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992)). Here,

Pope does not contend that the trial court's attempted theft of a motor vehicle 'to convict' jury

instruction failed to inform the jury on every element of the offense.[5] Instead, he only takes

issue with the trial court's substantial step definitional instruction. But this is not an alleged

error of constitutional magnitude that we may address for the first time on appeal. *Gordon*, 172

Wn.2d at 677. Accordingly, we hold that by failing to object to the substantial step instruction,

Pope has failed to preserve his argument that the trial court erred in giving the instruction.

Moreover, even if this issue were properly before us, Pope's claim lacks merit. Here the

trial instructed the jury, "A substantial step is conduct which strongly indicates a criminal

purpose and which is more than mere preparation." Suppl. CP at 146. This instruction deviates

from *Washington Pattern Jury Instruction: Criminal* 100.05 only insofar as it replaces "that" with

"which." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

100.05 at 390 (3d ed. 2008) (WPIC).

---

[5] That instruction provided:

> To convict the defendant of the crime of Attempted Theft of a Motor Vehicle as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt—
>
> (1) That on or about August 8th, 2011, the defendant did an act which was a substantial step toward the commission of theft of a motor vehicle;
> (2) That the act was done with intent to commit theft of a motor vehicle; and
> (3) That the acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Suppl. CP at 147.

Pope nonetheless argues that the trial court erred by using WPIC 100.05 because the instruction differs from the instruction adopted in *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). Specifically, Pope claims that the substantial step jury instruction's use of the word "indicate" rather than "corroborate" relieved the State of its burden of providing independent and corroborating proof of Pope's intent. Br. of Appellant at 20. He also claims that the instruction's reference to "a criminal purpose" rather than "the criminal purpose" relieved the State of its burden to prove Pope's criminal intent. Br. of Appellant at 21. But we have recently rejected these same exact claims in *State v. Davis*, 174 Wn. App. 623, 636-37, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013). Accordingly, even if Pope had preserved these issues for appeal by objecting to the substantial step definitional jury instruction at trial, his claims lack merit in light of our decision in *Davis*.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Last, Pope contends that his defense counsel was ineffective for failing to adequately investigate his case and for failing to advise him about accepting a plea offer. Again, we disagree.

We review ineffective assistance of counsel claims de novo. *State v. Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To establish ineffective assistance of counsel, Pope must show both that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness based on all the circumstances and (2) the deficient performance resulted in prejudice in that there was a reasonable possibility that the outcome of the proceeding would have differed but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Reichenbach*, 153 Wn.2d 126, 130,

101 P.3d 80 (2004). We strongly presume that counsel is effective. *Reichenbach*, 153 Wn.2d at 130. To overcome this presumption, the defendant bears the burden of "establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *Reichenbach*, 153 Wn.2d at 130).

A.    *Failure To Investigate*

Pope first asserts that his counsel was ineffective for failing to adequately investigate his case before trial. Specifically, Pope argues that his defense counsel failed to review his medical records before trial, failed to consult with his treating physicians, failed to consult with experts to determine whether Pope could have punched the victim in the manner alleged, and failed to secure witnesses to testify on Pope's behalf. In support of his claim that defense counsel failed to review his medical records before trial, Pope cites to counsel's December 14, 2011 motion for funds for copies of Pope's health records, which was filed after the guilt phase of Pope's trial had ended on December 8. Although Pope's defense counsel did not file for reimbursement until after trial, a November 30, 2011 invoice attached to the motion clearly shows that defense counsel requested Pope's medical records prior to the start of trial on December 6, 2011. Accordingly, Pope fails to show that defense counsel rendered deficient performance by failing to review his medical records before trial.

With regard to his claims that his defense counsel was ineffective for failing to consult with his treating physicians or with experts that could testify that he was unable to commit the assault because of his Parkinson's disease, Pope fails to demonstrate that the outcome of his trial would have differed had his counsel consulted with his physicians or potential expert witnesses. On this record, Pope cannot show that his treating physicians or any potential expert witness

No. 43172-6-II

would have provided admissible evidence favorable to his defense. Thus, his claim fails the prejudice prong of the ineffective assistance of counsel test.

And, with regard to his claim that defense counsel failed to secure witnesses to testify on his behalf, Pope similarly fails to show that any potential witness would have provided admissible evidence favorable to his defense. Accordingly, Pope fails to demonstrate on this record that his defense counsel was ineffective for failing to adequately investigate his case.

B.    *Failure To Advise Pope Regarding Plea Deal*

Finally, Pope argues that his defense counsel was ineffective for failing to advise him about whether to accept a plea offer. This argument is meritless because there is no evidence in the record that the State had offered a plea deal to Pope. Accordingly, we hold that Pope cannot show that his defense counsel rendered ineffective assistance and we affirm his convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Penoyar, J.

14