[No. 29842-9-I.    Division One.    May 2, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. VENITA
TATUM, *Appellant*.

*Jessica A. Ryan* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Theresa L. Fricke, Senior Prosecuting Attorney,* for respondent.

Pekelis, A.C.J. — Venita Tatum appeals the trial court's denial of a motion for a continuance, which was sought to procure the attendance at trial of a witness for the defense. Tatum contends the court erred in concluding that a subpoena issued for a prior trial date had expired. We agree that the court's legal conclusion was erroneous, but affirm nonetheless because the error was harmless.

Tatum was charged with one count of delivery of cocaine in violation of the Uniform Controlled Substances Act. Two versions of the events were adduced at trial.

The State's evidence, derived largely from the testimony of officers of the Seattle Police Department, showed that on the night of January 4, 1991, Seattle police conducted an undercover buy/bust operation in which Officer Rudy Gonzales posed as a buyer. At 9:30 p.m., Officer Gonzales left his car and entered the parking lot of an apartment complex in Seattle. A man later identified as Leon Johnson asked what Gonzales was up to. Gonzales replied he was looking for a "twenty", a common street term for $20 worth of crack cocaine. Johnson instructed Gonzales to wait on the second level of the apartment building.

Gonzales observed Johnson walk to the parking lot and meet a woman, who handed something to Johnson. Johnson then walked back to Gonzales and handed him what appeared to be a rock of cocaine in exchange for a premarked $20 bill. As Gonzales returned to his car, he observed Johnson walk back to the woman and hand her something.

Gonzales immediately provided the arrest team with descriptions of the two persons. When the arresting officers arrived at the scene, they saw a woman, subsequently identified as Venita Tatum, who fit the description provided by Gonzales. Tatum was standing on the second level of the apartment building with a man who did not fit the description of Johnson, and whom the officers recognized as Rodney Young. When questioned, Tatum indicated that Johnson was on the third level of the apartment building.

Tatum was arrested. A search incident to the arrest revealed the premarked $20 bill in Tatum's pocket; a subse-

quent search uncovered $142 in cash on Tatum's person. The rock eventually tested positive for cocaine.

Tatum's defense was that she had no role in the drug transaction. She maintained that she had been approached by Johnson only once that evening and had merely given him change for a $20 dollar bill.

Tatum testified that on the night in question, she accompanied Rodney Young to a hair salon near the aforementioned apartment complex. During the coiffure, Tatum departed to purchase pop and potato chips for Young. At the market, she met a friend, Angie Walters, who agreed to accompany her back to the salon; the pair took a path through the parking lot of the apartment. Young had already left the salon, however, and he met them on the way. At this point Johnson approached the group and asked for change of a $20 bill. Tatum gave him two tens in exchange for the twenty. Angie then went home, and Tatum walked with Young to a lighted area of the apartment complex in order to look at Young's hair. Shortly thereafter, police officers approached them and arrested Tatum.[1]

Young's testimony corroborated Tatum's version of the events, though he did not mention that Angie Walters was present.

On the last day of trial, the defense moved for a continuance when it learned that Walters, one of the defense witnesses, could not come to court owing to tonsillitis and her child's ear infection. Defense counsel represented that Walters was a "crucial" material witness, and that "a day or two would give Ms. Walters an opportunity to come". In response, the State pointed out that "it just seems that things keep happening to delay this case",[2] but acknowledged that Walters was "a material witness".

---

[1]When asked why she had $142, Tatum explained that she had obtained it that day after working for her father in his construction shop.

[2]Initially, the trial had to be continued six times owing to unavailability of defense counsel. Trial commenced on May 14, 1991, but a mistrial was declared when Defendant called the court "indicating that she was having a miscarriage". The trial was rescheduled for June 19, 1991, but was continued to August 5, 1991, because Angie Walters, "a necessary defense witness [was] unavailable".

When the court asked about the materiality of Walters' anticipated testimony, defense counsel offered the following explanation:

[B]asically, Ms. Walters would corroborate testimony of my client; she was in the area when it occurred. . . . Officer Gonzales . . . testified there were two contacts. [S]he was an eye witness to [the second contact]. And she did actually have conversations with Mr. Johnson. I think that she corroborates why my client was in that area. She corroborates where my client had been and where she was coming from. And she was with my client. . . . [M]y client met up [at the store] with Ms. Walters; then they walked back to the complex together and it was that point in time when Officer Gonzales saw what has been labeled as contact number two. Ms. Walters was there and she saw that.

After reviewing a copy of the subpoena served on Ms. Walters, the court noted that it was "a subpoena to appear on June 20", the prior trial date, which had been continued to August 5. Defense counsel argued that because the trial date was continued, "that subpoena should carry through for this trial". Counsel also pointed out that "Ms. Walters was notified when the new trial date would be and I have had numerous conversations with her and she said they would be here; she recognized the fact that she was under subpoena from the prior trial."

The court rejected these arguments and denied the motion for continuance, reasoning as follows:

Just because the subpoena has been issued way back when, and it has been continued, this doesn't last indefinitely in as far as this subpoena is concerned.

. . . .

[T]his subpoena, as I see it, is not effective once the case was continued. . . . And under these circumstances, from what you indicated, I am not going to grant a continuance.

Tatum was convicted as charged, and she now appeals the denial of her motion for a continuance.

Tatum contends that the trial court erred as a matter of law, arguing that language in CR 45(g) and CrR 6.12(b) mandates the conclusion that a subpoena imposes a continuing duty to appear and testify until discharged by the court or the summoning party, even if the trial date is continued.

Both the civil and criminal rules provide that a witness subpoenaed for trial "is dismissed and excused from further attendance as soon as he has given his testimony in chief and has been cross-examined thereon". CR 45(g); CrR 6.12(b). By negative implication, according to Tatum, a witness is *not* excused from the obligation to attend until he or she has testified in the case.

This issue was expressly left undecided in *State v. Jackman*, 113 Wn.2d 772, 781, 783 P.2d 580 (1989). In that case, however, the Supreme Court stated that the language of the foregoing rules governing service of subpoenas does *not* resolve the issue. *Jackman*, 113 Wn.2d at 781.

The majority of courts that have addressed this issue have concluded that subpoenas remain in effect beyond the specific date for which they are issued and impose a continuing duty to appear until discharged. *See, e.g., United States v. Snyder*, 413 F.2d 288 (9th Cir.), *cert. denied*, 396 U.S. 907 (1969), *cited with approval in In re Grand Jury Witness*, 835 F.2d 437, 442 (2d Cir. 1987); *cert. denied sub nom. Arambulo v. United States*, 485 U.S. 1039 (1988); *In re Ragland*, 343 A.2d 558, 559 (D.C. 1975) (per curiam); *In re Grand Jury Subpoenas*, 363 So. 2d 651, 654 (La. 1978).

■ We believe that to require issuance of a new subpoena upon the setting of each new trial date would place an unnecessary burden on the courts, the parties, and those subpoenaed to appear as witnesses. *See Snyder*, 413 F.2d at 290 (to construe subpoenas as imposing a continuing obligation to appear is of "practical importance to the administration of justice"). Particularly in the context of brief continuances of the trial date, the parties involved should have the authority to arrange for compliance with a subpoena without fear that the failure to issue a new subpoena will, as a matter of law, constitute a failure to adequately procure the witness's presence for trial.[3]

---

[3]*Cf. State v. Hobson*, 61 Wn. App. 330, 337, 810 P.2d 70 (despite intervening continuance, where State twice subpoenaed a witness and "never lifted [the] subpoena", State had made a good faith effort to obtain witness's presence at trial), *review denied*, 117 Wn.2d 1029 (1991).

We conclude, therefore, that a subpoena ordinarily imposes upon the summoned party a continuing obligation to appear until discharged by the court or the summoning party. Accordingly, it was error to deny Tatum's motion for a continuance, which she sought to procure the presence of a material witness, *solely* on the grounds that no second subpoena had been issued following a prior postponement of the trial date.

■■ The State argues that "[g]iven the lack of authority on the subject", the trial court's decision cannot be deemed an abuse of discretion. We disagree. Generally, the granting or denying of a motion for continuance of the trial of a case, whether criminal or civil, rests within the sound discretion of the trial court, and will not be disturbed absent a showing that the trial court in ruling upon the motion either failed to exercise its discretion or manifestly abused its discretion. *State v. Miles*, 77 Wn.2d 593, 597-98, 464 P.2d 723 (1970); *State v. Angulo*, 69 Wn. App. 337, 341, 848 P.2d 1276, *review denied*, 122 Wn.2d 1008 (1993). However, there is no authority for the proposition that a trial court's decision on a legal issue of first impression necessarily constitutes a proper exercise of discretion. When the trial court bases an otherwise discretionary decision solely on application of a court rule or statute to particular facts, the issue is one of law, which is reviewed de novo on appeal. Here, we conclude that the trial court made an error of law.

■ Nevertheless, even where the denial of a motion for continuance is alleged to have deprived a criminal defendant of his or her constitutional right to compulsory process, the decision to deny a continuance will be reversed only on a showing that the accused was prejudiced by the denial and/or that the result of the trial would likely have been different had the continuance not been denied. *State v. Eller*, 84 Wn.2d 90, 95-96, 524 P.2d 242 (1974); *see also State v. Edwards*, 68 Wn.2d 246, 255, 412 P.2d 747 (1966). The determination as to whether the defense was prejudiced and whether the result would likely have been different "must be [based on] the circumstances present in the particular case." *Eller*, at 96.

Here, we have no hesitation in concluding that Tatum was not unfairly prejudiced. The result would not likely have been different given the overwhelming direct evidence of guilt and the fact that, at best, Walters would have testified to the same story told by Tatum and Young.

Tatum argues that Walters' testimony would have differed from Young's in that Walters' testimony "covered the gap between the time Ms. Tatum left Rodney Young at the hair salon and the time she again encountered him in the parking lot." However, the key event in Tatum's version of the events — making change for Johnson — occurred after this "gap". Hence, Walters' corroboration of prior events would not have materially increased Tatum's credibility as to events that occurred during the crucial juncture.

Thus, we are convinced that Walters' testimony would have been merely corroborative. Although Tatum argues that this "would necessarily have increased [Tatum's] credibility in the eyes of the jury", we are unpersuaded. Tatum's version was rejected by the jury and it is unlikely that cumulative corroborative testimony by her friend would affect the outcome.

We conclude the error was harmless, and therefore affirm.

AGID and BECKER, JJ., concur.

Review denied at 125 Wn. 2d 1002 (1994).