FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9: 50

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44866-1-II |
| Respondent, | |
| v. | |
| COURTNIE DANIELLE CROSBY, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Courtnie Crosby appeals her convictions for residential burglary, robbery in the first degree, and violation of a court order. Crosby argues that the trial court violated her right to present a defense when it denied her continuance motion and that she received ineffective assistance of counsel. We affirm.

## FACTS

### I. THE CRIMES

Crosby and Felix Preval had a romantic relationship that ended in late December 2011. Crosby and her children resided with Preval in his home until their relationship ended.

A no contact order prohibited Crosby from contacting Preval. On December 28, 2011, Crosby went to Preval's home to retrieve some of her belongings, but an argument ensued and she left. Later in the evening, Crosby returned. While Preval and Crosby loaded her belongings into a vehicle, Darnell Jones and Clayton King attacked Preval. After dragging Preval into his home, Jones and King stabbed Preval several times in his abdomen, puncturing his stomach. They also

took approximately $19,000 in cash from Preval's home. Crosby entered and remained in the home throughout the incident. After the stabbing, Crosby did not help Preval, and she fled the scene.

The State charged Crosby by amended information with assault in the first degree, residential burglary, robbery in the first degree, and felony violation of a court order. Additionally, the State alleged that Crosby or an accomplice was armed with a deadly weapon during commission of the assault, burglary, and robbery.

## II.    MOTION FOR CONTINUANCE

Initially set for May 7, 2012, the trial court continued the trial four times because the parties needed time to prepare for trial and Crosby's co-defendant was assigned a new attorney.

Due to a breakdown of communication with Crosby, her attorney enlisted another defense attorney to assist him on Crosby's case. On January 29, 2013, Crosby's original attorney moved to withdraw and asked that the attorney who assisted on Crosby's case substitute as counsel. The new attorney represented to the trial court that she had been involved in the case for approximately three months, that she had already reviewed the discovery, and that she had talked to Crosby. She assured the trial court that she could try the case without any additional continuances if it was set over about a month. At that time, the defense knew of no new witnesses. The following colloquy occurred between the trial court and the new attorney:

> THE COURT: [R]eally, really, really, really, you can be ready on March 4th? If you were a brand-new lawyer walking into this thing, I really don't feel like I can hold you to that. You have actually seen the discovery and talked to the defendant, so you should have a basis—
> [ATTORNEY]: Your Honor, I would say I have been involved in this case, you know—I'm going to say approximately three months.
> THE COURT: So, you feel confident.
> [ATTORNEY]: [The original attorney] might be able to correct me on that. I have had discussions with [him] and Ms. Crosby together and separately regarding the

case, and I have read all of the discovery. I have read through it all. Some of them in depth with Ms. Crosby.

THE COURT: Does March 4th work for you?

[ATTORNEY]: Yes, it does.

Report of Proceedings (RP) (Jan. 29, 2013) at 13-14. Over the State's objection, the trial court granted the motion to withdraw, entered an order authorizing substitution of counsel, and continued the trial to March 4, 2013.

On the morning of March 4, Crosby moved for a continuance. In support of her motion, the attorney explained that two-and-a-half weeks prior to trial, she learned that Crosby "has a lifelong history of abuse including abuse and violence with the alleged victim in this case." RP (Mar. 4, 2013, J. Chushcoff) at 5. The attorney argued that she believed Crosby suffered from battered person syndrome and that it would be an appropriate defense to the charges. At that point, she was in the process of gathering Crosby's mental health records, but because many records were out of state, she did not yet have all of them. She advised the trial court that two psychologists agreed with her "analysis of the situation and [were] willing to support that defense" but they weren't available the first two weeks of March. RP (Mar. 4, 2013, J. Chushcoff) at 5. Crosby argued that she needed expert testimony to explain why Crosby would make otherwise seemingly illogical statements to law enforcement.

The State objected, noting that Crosby's prior conviction for assault constituted the only known domestic violence between Crosby and Preval. Crosby did not persuade the trial court that battered person syndrome would be an applicable defense in the case. The trial court denied the continuance motion because the case had been pending for approximately one year and "[t]hat's plenty of time for the defense to get ready on this case." RP (Mar. 4, 2013, J. Chushcoff) at 18.

Again on March 4, Crosby renewed her continuance motion and requested two additional weeks to prepare. Her attorney represented to the trial court that once she became Crosby's trial counsel and started working with her to prepare for trial, she learned more about Crosby's background and realized that there was "an issue pertaining to battered women's syndrome [that is] . . . definitely . . . relevant in terms of explaining Ms. Crosby's conduct before, during, and after the events that caused the charges to be brought." RP (Mar. 4, 2013, J. Culpepper) at 8. She intended to use battered person syndrome to explain why Crosby gave conflicting and untrue statements to law enforcement. At that time, no potential expert witnesses had performed psychological examinations of Crosby. The trial court again denied the continuance motion and stated that battered person syndrome would not be applicable to Crosby's defense.

III.    THE TRIAL

Preval testified that on December 28, 2011, prior to Crosby's arrival, he saw two men outside his home. During the attack, Crosby didn't help Preval; he thought that he heard Crosby say she wanted to call the police, "but not with any kind of energy." RP (Mar. 6, 2013) at 123. Preval also heard Jones tell Crosby not to call the police and that he didn't want to hurt her. According to Preval, Crosby faced him during the stabbing. Preval had not previously told Crosby about the cash he kept in his home. While Preval recuperated from his injuries in the hospital, Crosby contacted him via text message and told him that one of the men raped her.

The State presented further evidence of Crosby's involvement in the incident through the testimony of Detectives Robert Baker and Health Holden, who described Crosby's changing accounts of the incident. During Detective Baker's first interview with Crosby on February 1, 2012, Crosby said Jones and King dragged Preval inside and then came back outside and forced

4

her into the residence. Crosby gave Detective Baker a detailed account of an alleged sexual assault committed upon her. The intensity of Crosby's emotions varied throughout the interview.

Following the interview, Detective Baker obtained a warrant to locate and seize evidence of the alleged sexual assault. However, swabs of suspected liquids from the carpet in the room in which Crosby claimed she was sexually assaulted returned no evidence to substantiate that a sexual assault had occurred.

On March 8, Detective Holden interviewed Crosby while Detective Baker watched. Crosby "made it very clear that she had nothing to do with [the men involved in the incident]" and that she "had not contacted them." RP (Mar. 11, 2013) at 282. She again claimed that she was sexually assaulted. Crosby said that she did not receive anything taken during the incident.

Immediately following the interview with Detective Holden, Detective Baker again interviewed Crosby. Detective Baker told Crosby that law enforcement knew that she had set up the robbery. Crosby said that she received twenty-three $100 bills from Jones and King following the incident. She said that Jones is a friend, and she sought his help to get her belongings back from Preval. She admitted that she planned to rob Preval of money. Crosby told Detective Baker that she met Jones and King prior to the incident, and she told them they would have to jump Preval outside and bring him into the residence. Crosby drove Jones and King to Preval's residence, and dropped them off a few blocks away. Later in the interview, Crosby admitted that she lied about the sexual assault. Finally, on March 9, Crosby told Detective Baker that Jones told her to go to the back bedroom during the incident and make it sound like she had been assaulted.

Crosby testified at trial. She apprised the jury of her feelings and emotions at the times of the interviews, but not about any mental health diagnoses or her history of abuse. She testified that discussions with Jones and King about robbing Preval were a joke. Crosby said she did not

know that Preval kept cash in his residence and that Jones had pulled her hair and forced her to take an envelope of cash to prevent her from going to law enforcement. Crosby admitted to taking the cash and spending some of it. Crosby acknowledged the falsity of the sexual assault story and said that Jones told her to tell Detective Baker that she was raped. Crosby testified that she did not tell Preval about any sexual assault. She said that she lied to Detective Baker because she feared Jones and King, and that she continued to lie in subsequent interviews because she thought she needed to provide consistent statements. Crosby testified that she agreed with what Detective Baker suggested during the first interview only because he "kept banging on the table" and she wanted him to stop. RP (Mar. 12, 2013) at 429.

The jury found Crosby not guilty of assault in the first degree, but guilty of robbery in the first degree while armed with a deadly weapon, residential burglary while armed with a deadly weapon, and violation of a court order. The trial court sentenced her to a standard range sentence of 77 months in custody. Crosby appealed.

ANALYSIS

I.    RIGHT TO PRESENT A DEFENSE

A.    Standard of Review

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, a criminal defendant's right to present a defense is not absolute; a defendant seeking to present evidence must show that the evidence is "at least minimal[ly] relevant'" to a fact at issue

in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

A trial court's denial of a continuance motion may infringe on a defendant's right to compulsory process and right to present a defense "if the denial prevents the defendant from presenting a witness material to [her] . . . defense." *State v. Downing*, 151 Wn.2d 265, 274-75, 87 P.3d 1169 (2004). We determine whether a trial court's denial of a continuance motion violated a criminal defendant's constitutional right to present a defense on a case-by-case basis, examining "'the circumstances present in the particular case.'" *Downing*, 151 Wn.2d at 275 n.7 (quoting *State v. Eller*, 84 Wn.2d 90, 96, 524 P.2d 242 (1974)). We review the trial court's decision to grant or deny a continuance motion for an abuse of discretion. *Downing*, 151 Wn.2d at 272. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). And we review de novo claims of a denial of Sixth Amendment rights, including the right to present a defense. *See e.g., Jones*, 168 Wn.2d at 719; *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).

B.     The Trial Court's Continuance Ruling Did Not Violate Crosby's Right to Present a Defense

Crosby argues that by denying her continuance motion to secure records of her history of abuse and to procure expert testimony on battered person syndrome, the trial court abused its discretion which resulted in a violation of her constitutional right to present a defense. We disagree.

> [E]ven where the denial of a motion for continuance is alleged to have deprived a criminal defendant of his or her constitutional right to compulsory process, the decision to deny a continuance will be reversed only on a showing that the accused was prejudiced by the denial and/or that the result of the trial would likely have been different had the continuance not been denied.

*State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994). Here, the trial court did not abuse its discretion by denying the motion for a continuance. Crosby can demonstrate neither prejudice nor that the result of the trial would likely have been different.

A subset of post-traumatic stress disorder (PTSD), battered person syndrome is a "collection of behavioral and psychological characteristics exhibited by victims of a prolonged, repetitive pattern of physical and emotional abuse at the hands of their partners." *State v. Riker*, 123 Wn.2d 351, 358, 869 P.2d 43 (1994). Evidence of abuse and battered person syndrome can be admitted to support a claim of self-defense. *In re Pers. Restraint of Faircloth*, 177 Wn. App. 161, 169, 311 P.3d 47 (2013) (citing *State v. Janes*, 121 Wn.2d 220, 238-41, 850 P.2d 495 (1993)).[1] Self-defense requires, along with other evidence, that "the defendant reasonably perceived imminent danger of great personal injury." *Faircloth*, 177 Wn. App. at 169. "[T]he syndrome [is] . . . admitted only in cases in which the batterer and the victim have developed a strong relationship, usually over a period of years." *Riker*, 123 Wn.2d at 360. Expert testimony on this syndrome outside of the context of a relationship between the batterer and the victim is not admissible. *Riker*, 123 Wn.2d at 363. Furthermore, evidence of battered person syndrome is not admissible for purposes of "'general credibility.'" *State v. Green*, 182 Wn. App. 133, 155, 328 P.3d 988 (2013) (quoting *State v. Hanson*, 58 Wn. App. 504, 508, 793 P.2d 1001 (1990)), *review denied*, 337 P.3d 325 (2014).

---

[1] Battered woman syndrome and battered child syndrome both "find their basis in abuse-induced PTSD and elicit a similar response from the abuse victim." *Janes*, 121 Wn.2d at 235. "Given the close relationship between the battered woman and battered child syndromes, the same reasons that justify admission of the former apply with equal force to the latter." *Janes*, 121 Wn.2d at 235.

The trial court acted reasonably by denying Crosby's continuance motion. Crosby was in custody and the trial had been pending for almost one year. The trial date had already been continued four times. Despite learning this new information two-and-a-half weeks prior to the trial date, Crosby did not move for a continuance until the day of trial. The potential expert witnesses had not yet evaluated Crosby and were opining based on only what Crosby's counsel had represented to them. At the time she moved for a continuance, Crosby failed to establish the admissibility or materiality of these experts' testimony. Because the trial court's decision to deny the continuance motion was not manifestly unreasonable or based on untenable grounds, the trial court did not abuse its discretion.

Additionally, when reviewing the record and the particular circumstances of the case, Crosby has not shown that any prejudice resulted from the denial of her continuance motion. The records and expert testimony regarding battered person syndrome were not relevant to her defense. Crosby did not claim self-defense. Furthermore, the record demonstrates that Crosby did not participate in the use of force against Preval and she did not perceive imminent danger of great personal injury by Preval. In fact, Crosby wanted to offer expert testimony on battered person syndrome to explain her behavior during and after the incident, e.g. why she did not call the police, why she accepted money from Jones and King, and why she gave conflicting statements to Detectives Holden and Baker. This use of battered person syndrome is irrelevant to her defense and expert testimony would not be relevant in this context. *See Riker*, 123 Wn.2d at 358. Because the evidence Crosby would have offered if the trial court granted her continuance motion is not minimally relevant to a fact at issue in the case, she cannot show that she was prejudiced by the denial or that the result of the trial would likely have been different. The trial court did not violate Crosby's right to present a defense or abuse its discretion, and Crosby was not prejudiced.

II.  THE TRIAL COURT'S RULING DID NOT RESULT IN INEFFECTIVE ASSISTANCE OF COUNSEL

A.  Standard of Review

Crosby also contends that the trial court decision to deny the continuance resulted in her attorney providing ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, Crosby must show that counsel's performance was so deficient that it "'fell below an objective standard of reasonableness'" and that the deficient performance prejudiced her. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). There is a strong presumption that defense counsel's performance was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To establish prejudice, the defendant must show a reasonable probability that the deficient performance affected the outcome of the trial. *Thomas*, 109 Wn.2d at 226. We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

B.  Crosby Did Not Receive Ineffective Assistance of Counsel

Crosby argues ineffective assistance of counsel because her counsel could not adequately represent her without evidence and expert testimony to establish battered person syndrome. We disagree and hold that Crosby did not receive ineffective assistance of counsel.

Performance may be deficient if "counsel failed to conduct appropriate investigations to determine what defenses were available, adequately prepare for trial, or subpoena necessary witnesses." *State v. Maurice*, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). When the courts have held that a failure to investigate or call a potential witness constituted ineffective assistance, the witness has been crucial to the presentation of a legitimate defense. *See, e.g., Thomas*, 109 Wn.2d at 232. As discussed above, battered person syndrome is not a legitimate defense in the circumstances of Crosby's case because she did not present a defense of self-defense. Therefore,

her counsel was not deficient because any evidence regarding battered person syndrome was not admissible. Because Crosby fails to establish that her counsel's performance was deficient, her ineffective assistance of counsel claim fails.

We affirm Crosby's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.