# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50679-3-II |
| Respondent, | |
| v. | |
| RUSSELL ARNOLD FORD, | UNPUBLISHED OPINION |
| Appellant. | |

NEVIN, J.P.T.[*] — Russell Arnold Ford appeals his jury trial conviction for attempting to elude a pursuing police vehicle. He argues that (1) the trial court erred when it denied defense counsel's request for a recess to allow Ford to secure a witness's presence and that this error interfered with Ford's right to present a defense and right to compulsory process, and (2) he received ineffective assistance of counsel because defense counsel failed to request a material witness warrant to secure the same witness's presence. We affirm.

## FACTS

### I. BACKGROUND

Shortly before 9:30 PM on the evening of February 16, 2017, Cosmopolis Police Officer Nicholas Byron attempted to stop a van he had observed speed through a stop sign. The van

---

[*] Judge Jack Nevin is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

initially slowed to 5 to 10 miles an hour, and Officer Byron started to pull in behind it.  As the van slowed, Officer Byron was able to see the driver.

Rather than stopping, the van suddenly drove off at a high rate of speed.  As Officer Byron pursued the speeding van, it turned down a dead-end road, jumped the curb at the end of the road, became airborne, and came to a stop about 70 feet off of the roadway.

Officer Byron did not observe anyone exit the van.  He did, however, see someone run away from the van after it stopped.  Officer Byron did not see anyone else in the van.  The driver's side door was wide open and the passenger's side door was open about a half an inch.  Officer Byron characterized the passenger's side door as being "unlatched," and believed it could have come unlatched due to the impact of the crash.  1 Verbatim Report of Proceedings (VRP) at 81.

Kenneth Singleton, Jr., a bystander, also witnessed the crash and observed a man fleeing the van.  Singleton reported this to Officer Byron.

More officers arrived soon after the crash and searched the nearby wooded area.  Within five minutes, the officers located and arrested Ford.  After advising Ford of his *Miranda*[1] rights, Ford told Officer Byron that "he had borrowed the vehicle from a friend."  1 VRP at 59.

## II. PROCEDURE

The State charged Ford with attempting to elude a pursuing police vehicle.  The case proceeded to a jury trial.  Ford's defense was that he was not the driver.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

### A. PRETRIAL HEARINGS

During a pretrial hearing, there was some discussion about whether the van's prior owner, Kenneth Beebe, had identified Ford as the person who purchased the van. The State admitted that Beebe's statement[2] did not say that he sold the van to Ford and that any assertion by Beebe that he sold the van to Ford would be based on someone else's knowledge and would be inadmissible. The State further commented that the trial court could exclude Beebe's statement because of late disclosure.

At a later pretrial hearing, defense counsel stated that Ford planned to call Beebe as a witness. Defense counsel did not, however, comment on what information Beebe would provide.

### B. TRIAL

1. TESTIMONY ON FIRST DAY OF TRIAL AND HEARSAY OBJECTION

At trial, Officer Byron and Singleton testified consistent with the facts set out above. Although Singleton could not identify the person he saw fleeing the van, Officer Byron identified Ford as the driver based on what he (Officer Byron) had seen when the van had initially slowed down.

On cross-examination, defense counsel asked Officer Byron if he had "any information" about who owned the van. 1 VRP at 73. The State objected on hearsay grounds. Defense counsel responded that this information would have probably been communicated by radio and that there was likely a "[computer-aided dispatch (CAD)] record" containing this information. 1 VRP at 73. The trial court reserved its ruling on the State's hearsay objection.

---

[2] This statement is not part of the record on appeal.

Ford's witnesses included Ford's friends David Ruport, Chelsie Landgraf, and Tyler Parker. Ford also called Officer Byron.

Ruport testified that on the night of the incident, he, Ford, and another friend drove to a nearby town to look at a vehicle that was for sale. On the way back, they stopped at a gas station and Ford joined a man and a woman named "Chelsie" in their van. 1 VRP at 131. Ruport testified that Ford got into the van on the passenger's side. Ruport also testified that he was driving behind the van when he saw a police vehicle pull in behind the van. He stated that he did not see the people in the van change drivers at any point. Ruport admitted that he had a criminal record that included "crimes of dishonesty." 1 VRP at 129.

Landgraf testified that on the night of the incident, Ford joined her and her boyfriend Parker in a van that was driven by Parker. She testified that Ford was sitting in the front passenger's seat and that she was sitting on a mattress in the back of the van. She further testified that Parker was driving at the time of the pursuit and that she and Parker fled through the driver's side door after the van crashed. Landgraf admitted that she had several prior theft convictions.

After the trial court released the jury on the first day of trial, the trial court and the parties discussed the State's earlier hearsay objection related to whether Officer Byron had information about who owned the van. Regarding the source of Officer Byron's information regarding the van's owner, defense counsel stated that there was a CAD log but that Beebe could testify about the van's ownership and that he would be in court the next day. Defense counsel appeared to agree that questioning Beebe about the van's title would be a "more expedient" way to introduce the evidence of ownership than trying to introduce it through Officer Byron or through other official records. 1 VRP at 166.

4

2.    SECOND DAY OF TRIAL

On the second day of trial, before presenting any witnesses, the State advised the trial court that in a prior hearing Parker had stated that he had not been driving the van. The State was concerned that defense counsel was planning to call Parker for the sole purpose of impeaching him. Defense counsel clarified that she intended to call Parker to assist in establishing who owned the van after calling Officer Byron to testify about a photomontage that was used to identify Parker as the van owner—apparently through Beebe. Defense counsel then stated, "I can go ahead and not ask Mr. Parker whether he was driving the vehicle that night, but there was some solid evidence that he was." 2 VRP at 173.

Defense counsel then called Officer Byron. Officer Byron testified that after the attempted eluding incident, he had constructed a photomontage containing a photograph of Parker to "help identify the subjects that potentially purchase[d] a vehicle." 2 VRP at 182. When defense counsel asked Officer Byron if someone had selected Parker from the photomontage, the State objected on hearsay grounds, and the trial court sustained the objection.

Outside of the jury's presence, the State argued that because Beebe had not testified, Beebe's identification of Parker in the photomontage was hearsay. The State also objected on the basis of relevance. Defense counsel argued that the vehicle's ownership was relevant to who was driving the vehicle and that the vehicle's ownership could "establish[ ] a reasonable doubt in the mind of the juror [sic]." 2 VRP at 183.

The parties discussed the hearsay exception for identification. The State explained that the exception only applied after the witness has testified and that Beebe had not testified. Defense

5

counsel responded, "I did ask him to be here. I've subpoenaed him, but he has not shown." 2 VRP at 185.

The State advised the trial court that Beebe had been in court the day before and that Beebe "said he had received only [the State's] subpoena." 2 VRP at 185. The State said that it had told Beebe that it was not going to call him and that he could go home, but it asked him to remain available.

Defense counsel responded that although she personally had not been able to reach Beebe, her office had spoken to Beebe on the afternoon of the first day of trial. According to defense counsel, Beebe "indicated that he had gotten [defense counsel's] subpoena, but that he didn't want to come back to court." 2 VRP at 185. When the State commented that Beebe had seemed cooperative during their interactions, defense counsel stated, "Maybe we could take a recess and you could call him." 2 VRP at 185.

The trial court responded,

> Well, we need to have witnesses arranged and ready to go, so. . . I'm going to sustain the objection as far as hearsay, because that sounds like where you're headed as far as some sort of gesture towards a particular person on that montage.

2 VRP at 186 (alteration in original).

The trial court then asked defense counsel whether Beebe had been served. Defense counsel responded, "I believe so. I would have to double check."[3] 2 VRP at 186. When the jury then returned, the trial court instructed it to disregard the testimony regarding the photomontage.

---

[3] The appellate record contains a copy of the subpoena that the State served on Beebe; it does not contain any record of a subpoena that the defense served on Beebe.

Defense counsel then asked Officer Byron if he had been able to determine who owned the van, and the State objected based on hearsay. The trial court sustained the objection because defense counsel had not laid "a proper foundation." 2 VRP at 187. Defense counsel then questioned Officer Byron about looking up Department of Licensing records and whether those records disclosed the owner of the van. The State objected, arguing that Officer Byron was not the record custodian. The trial court sustained the objection and instructed the jury to disregard this line of questioning.

Defense counsel next called Parker. Parker testified that he had not seen Ford "for a long time" and denied seeing him on February 16. 2 VRP at 189. Parker admitted that he knew Landgraf, but he testified that she was not his girlfriend and that he had last seen Landgraf about six months earlier, well before the eluding incident. Parker also testified about talking to Officer Byron a couple of weeks before the trial. He stated that he told Officer Byron that he did not have anything to do with "a felony that happened." 2 VRP at 190. Parker also admitted that he was currently in custody on a theft charge.

The State did not question Parker. Neither party asked Parker whether he owned the van.

In closing argument, defense counsel argued that the key issue was whether the State had proven that Ford had been driving the van during the eluding incident. Defense counsel's argument also focused on the credibility and accuracy of the testimony implicating Ford as the driver.

The jury found Ford guilty of attempting to elude a police vehicle. Ford appeals his conviction.

ANALYSIS

Ford argues that the trial court erred when it denied defense counsel's request for a recess to allow her to secure Beebe's presence and that this error interfered with Ford's right to present a defense and right to compulsory process. He also argues that he received ineffective assistance of counsel because defense counsel failed to request a material witness warrant to secure Beebe's presence. These arguments fail.

## I. REFUSAL TO CALL A RECESS

We first address whether the trial court erred when it refused to call a recess to allow defense counsel time to secure Beebe's presence. Ford asserts that Beebe was a material witness because his testimony would have established that Parker had purchased the van and "Parker's ownership of the van was an important point for Ford's defense, as it tended to corroborate that Parker was the driver" rather than Ford. Br. of Appellant at 8.

We review a trial court's decision to grant or deny a recess for abuse of discretion. *State v. Mays*, 65 Wn.2d 58, 62, 395 P.2d 758 (1964); *State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011). The trial court abuses its discretion only if there is a clear showing that the court's exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

But

> even where the denial of a motion for [recess] is alleged to have deprived a criminal defendant of his or her constitutional right to compulsory process, the decision to deny [the motion] will be reversed only on a showing that the accused was prejudiced by the denial and/or that the result of the trial would likely have been different had the [motion] not been denied.

*State v Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994). This determination "'must be [based on] the circumstances present in the particular case.'" *Tatum*, 74 Wn. App. at 86 (alteration in original) (quoting *State v. Eller*, 84 Wn.2d 90, 96, 524 P.2d 242 (1974)). Ford does not meet this burden.

Ford intended to call Beebe to establish that Parker owned the van, which Ford asserts would make it more probable that Parker, rather than Ford, was driving the van. But the ownership of the van is not relevant[4] to who was driving the van *at the time of the incident*—just because someone owns a vehicle it does not mean he or she is the exclusive driver of that vehicle. Thus, there is no reasonable probability that the evidence Ford sought to offer would have changed the result in this case.[5]

Furthermore, Ford could have also introduced evidence of the van's ownership through Parker, whom the defense already intended to call as a witness. Because the defense had another way of establishing the van's ownership, Ford does not show that the trial court abused its discretion by refusing to call a recess to allow the parties to contact Beebe.

Because Ford fails to establish that calling Beebe would have changed the results of this case or otherwise establish that the trial court abused its discretion, Ford is not entitled to relief on this ground.

---

[4] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

[5] We note that Ford's reliance on *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966), does not change this outcome because *Edwards* does not address prejudice.

II. Right to Present a Defense and Right to Compulsory Process

Ford also contends that the trial court's refusal to grant a recess denied him his right to present "a complete defense," which includes his right to compulsory process to compel the attendance of witnesses. Br. of Appellant at 7. Again, we disagree.

> The Sixth Amendment provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor. . . ." U.S. Const. amend. VI. The federal right to compulsory process is applicable to the states through the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The defendant's right to compel the attendance of witnesses is "in plain terms the right to present a defense." *Washington*, 388 U.S. at 19. But the Washington Supreme Court has recognized that "[a]lthough guarded jealously, the right [to compulsory process] is not absolute." *State v. Smith*, 101 Wn.2d 36, 41, 677 P.2d 100 (1984). The defendant's right to obtain witnesses in his favor applies only to witnesses who are material to the defense. *Smith*, 101 Wn.2d at 41 (citing *Washington*, 388 U.S. at 23). And, the defendant bears the burden of establishing materiality. *Smith*, 101 Wn.2d at 41.

*State v. Wimbish*, 100 Wn. App. 78, 82, 995 P.2d 626 (2000). The burden of establishing materiality "has been described as establishing a colorable need for the person to be summoned." *Smith*, 101 Wn.2d at 41-42 (citing *Ashley* v. *Wainwright*, 639 F.2d 258 (5th Cir. 1981)). Ford fails to establish materiality.

Again, Ford sought Beebe's testimony to establish that Parker owned the van. As discussed above, the van's ownership was not relevant to who was driving the van at the time of the eluding incident. Additionally, there were other ways Ford could have established whether Parker owned the van. For instance, Ford could have presented records establishing the van's ownership or asked Parker whether he owned the van. Thus, there was no "colorable need" to summon Beebe, and Ford fails to show that he was denied his right to present his defense or his right to compulsory process. *Smith*, 101 Wn.2d at 42.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Finally, Ford argues that defense counsel's failure to request a material witness warrant to secure Beebe's testimony was ineffective assistance of counsel. Because it is not reasonably probable that the trial court would have granted a request for a material witness warrant, this argument fails.

When addressing an ineffective assistance of counsel claim, we begin our analysis with a strong presumption that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To prevail on a claim of ineffective assistance, Ford must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness based on all the circumstances and (2) the deficient performance prejudiced him because had the errors not occurred the result of the trial probably would have been different. *McFarland*, 127 Wn.2d at 334-35 (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Ford must satisfy both criteria in order to show that the conviction "'resulted from a breakdown in the adversary process that renders the result unreliable.'" *State v. Garrett*, 124 Wn.2d 504, 518, 881 P.2d 185 (1994) (quoting *Strickland*, 466 U.S. at 687). To establish prejudice in this context, Ford must show that the trial court would have granted a motion for a material witness warrant had defense counsel requested one.

CrR 4.10(a) provides for the issuance of material witness warrants. Under CrR 4.10(a), Ford could obtain a material witness warrant only if he showed that (1) Beebe's testimony was material and (2) Beebe had refused to obey a lawfully issued subpoena or it was impracticable to

11

secure Beebe's presence by subpoena. CrR 4.10(a)(2), (3). Ford fails to show that he satisfied both of these requirements.

First, as discussed above, Ford does not show that Beebe's testimony was material. Second, the record shows that when the trial court asked defense counsel if she had served Ford with a subpoena, defense counsel responded that although she believed that Beebe had been served with a defense subpoena, she would have to verify that he had been served. Thus, based on the record before the trial court, the trial court would have had no grounds to find that Beebe had refused to obey a lawfully issued subpoena.[6] Because Ford does not show that the trial court would have issued a material witness warrant had defense counsel requested one, his ineffective assistance of counsel claim fails.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
NEVIN, J.P.T.

We concur:

_____
WORSWICK, P.J.

_____
SUTTON, J.

---

[6] We note that Ford does not argue that defense counsel was ineffective for failing to subpoena Beebe.