IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| TERRY LONGLAND,<br><br>               Appellant,<br><br>   v.<br><br>WILLIAMS SCOTSMAN, INC. and<br>THE DEPARTMENT OF LABOR<br>AND INDUSTRIES,<br><br>               Respondents. | No. 79535-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. —Terry Longland appeals the trial court's findings of fact and conclusions of law affirming a Board of Industrial Insurance Appeals decision. This decision suspended Longland's industrial insurance benefits based on his failure to participate in the vocational process. We find no error warranting appellate relief and affirm.[1]

FACTS

Williams Scotsman, Inc. (Scotsman) employed Terry Longland as a truck driver. In July 2002, Longland suffered a workplace injury while loading tires onto a truck. He received surgery, chiropractic care, and other medical treatments for neck and right shoulder injuries. Longland opened a claim with the Department of Labor and Industries (Department) for the July 2002 incident. Longland also opened a claim with the Department in 2003 for carpal tunnel syndrome caused by his job at Scotsman.

---

[1] The September 20, 2019 motion to strike and stay briefing schedule is denied. Citations and pin cites are based on the Westlaw online version of the cited material.

After his first injury, Longland met with a vocational counselor seven times to evaluate his ability to work again and to assist with a vocational training plan "to give [him] the necessary skills to seek reasonably continuous gainful employment." Longland was determined eligible for vocational services on January 2, 2014. Longland disputed the eligibility determination. The Vocational Dispute Resolution office upheld the determination. Longland indicated he was only interested in becoming an airline pilot and "refused to consider or identify other areas of even potential interest." He also refused any assessment activity or occupation that would involve computer use.

In March 2014, Longland agreed to retake the College Placement Assessment test (Compass) to assess his proficiency and to determine which college courses would be most beneficial. When Longland took the Compass test in 2008, he hand-wrote his answers. When he went to retake the test in 2014, he refused to proceed because it was only administered on a computer. He stated he did not take the test because he is "not a computer person…never [has] been and… [has] no computer skills… [and has] no desire to be a computer skill expert." It also caused him increased hand pain. On April 2, 2014, Longland returned to take the Compass test. A testing center staff member set up the test for him, showed him how to use the mouse, and told him there was a tutorial. He entered his name but did not answer any questions. Longland then left the testing center stating he could not do the test.

On April 25, 2014, Sedgwick, Scotsman's claims management service, sent Longland a non-cooperation letter pursuant to WAC 296-14-410. It stated he failed to provide academic placement test information to his vocational counselor. Sedgwick requested a written response within 30 days explaining why he failed to provide the test

scores.

On May 9, 2014, Longland responded. He explained he attempted to take the Compass test twice but found it too difficult to use the computer because he could not work the mouse, and it caused him increased hand pain.

On August 20, 2015, the Department notified Longland it was suspending his benefits for failing to cooperate with vocational services.

On October 12, 2015, Longland sent a written formal protest of the Department's notice and order. The letter stated Longland's long-time treating physician opined that Longland is "physically, functionally, and emotionally disabled from the perspective of the various conditions affecting his bilateral upper extremities. In my view he needs to be pensioned out after assessment by a disability expert about how much function he has lost."

On December 21, 2015, the Department affirmed the order and notice suspending his benefits.

Longland appealed to the Board of Industrial Insurance Appeals (BIIA). Shortly before the BIIA hearing, Longland's attorney Teri Rideout retired. Rideout referred Longland to John E. Wallace. After Longland and Wallace had a falling out, Wallace withdrew effective September 15, 2016. Longland retained David B. Vail on November 2, 2016.

In a non-recorded phone conference, with all parties participating on November 14, 2016, Judge Dannen asked Vail how much time he needed to continue a conference set for November 14, 2016. Vail did not request a specific date or time and did not state how much time he needed to prepare. Judge Dannen would not "agree to

an open ended continuance" but did provide additional time and scheduled a more formal scheduling conference for December 1, 2016. Vail withdrew as counsel on November 23, 2016. Longland did not object.

Longland proceeded pro se. After three fact-finding hearings between March 9, 2017, and April 12, 2017, the BIIA affirmed the Department's decision. The BIIA noted that Longland's 2008 Compass test provided unproductive results because his tone was that of "one who was done working." For example, he selected "dislike very much" for 167 of the 168 questions on one of the questionnaires. Longland never submitted a medical opinion saying he was unable to use a computer to complete the 2014 Compass test.

The BIIA noted Longland's vocational counselor determined a security guard position would be a viable option for Longland, but due to Longland's behavior and "the fact that he wouldn't sign a plan, the employer was never able to submit a vocational plan." His counselor "recommended suspension of benefits."

Longland "admitted that from August 20, 2014, through August 20, 2015, no doctor provided an opinion that he couldn't participate in the vocational process." The BIIA noted that Joseph L. Dumovic, Longland's chiropractor, "admitted that he never rendered an opinion that Mr. Longland could not participate in vocational plan development," and "his medical records noted no objective evidence of abnormal upper extremities or swollen hands."

Bryan James Marchant, a medical specialist in orthopedic surgery, concluded that "Longland could have fully participated in his vocational plan and from 2013 through December 21, 2015, could have participated in vocational testing, complete paperwork,

4

learn how to use computers, perform handwriting, participate in activities to identify interests and work values, and participate in vocational plan development."

Longland requested review of the BIIA decision in King County Superior Court. Vail represented him in superior court. He asserted the suspension order was invalid because Scotsman failed to serve a subsequent notice as required by WAC 296-14-410. He also asserted the BIIA violated Longland's due process rights by "failing to allow [Vail's office] sufficient time to analyze and prepare case in potential representation of Terry Longland."

The trial court affirmed the BIIA's October 23, 2017 order.

Longland appeals.

## STANDARD OF REVIEW

The administrative procedure act does not govern judicial review of Board decisions. Instead, Title 51 RCW generally applies "the practice in civil cases" to appeals, and expressly provides that "[a]ppeal shall lie from the judgment of the superior court as in other civil cases."[2] So, this court reviews the superior court's decision and not the BIIA's decision.[3] This court reviews only "whether substantial evidence supports the trial court's factual findings and then . . . whether the trial court's conclusions of law flow from the findings."[4] We review the trial court's conclusions of law de novo.[5]

---

[2] RCW 51.52.140.

[3] Dep't of Labor & Indus. v. Slaugh, 177 Wn. App. 439, 444, 312 P.3d 676 (2013); RCW 51.52.110.

[4] Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343, 351, 409 P.3d 1162, rev. denied, 190 Wn.2d 1030, 421 P.3d 450 (2018).

[5] Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

ANALYSIS

Waiver

Longland claims Scotsman waived its right to object to Longland's good cause explanation for non-cooperation by waiting until 16 months after he refused to take the 2014 test before seeking to suspend benefits.

RCW 51.32.110 provides that when a worker refuses to submit to a medical examination, obstructs evaluation or examination for the purpose of vocational rehabilitation, or does not cooperate in reasonable efforts at rehabilitation, the Department or the self-insurer, with notice to the worker, may suspend benefits.

WAC 296-14-410 details the procedural requirements for how the Department or the self-insurer can suspend benefits for non-cooperation. The Department or the self-insurer must first send a letter to the worker stating benefits may be suspended and request an explanation for the non-cooperation.[6] The worker has 30 days to respond in writing explaining their reason for non-cooperation.[7] Neither RCW 51.32.110 nor WAC 296-14-410 require the Department or the self-insurer to act on the response within a certain amount of time.

Waiver is an equitable doctrine.[8] The appropriateness of equitable relief is a question of law.[9] Equitable relief may be granted in industrial insurance cases under very limited circumstances.[10] Two requirements must be met before equitable relief may be

---

[6] WAC 296-14-410(4)(a).
[7] WAC 296-14-410(4)(b).
[8] McLain v. Kent Sch. Dist., No. 415, 178 Wn. App. 366, 378, 314 P.3d 435 (2013).
[9] Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005).
[10] Rabey v. Dep't of Labor & Indus., 101 Wn. App. 390, 395, 3 P.3d 217, rev. granted, 142 Wn.2 1007, 16 P.3d 1266 (2000), rev. dismissed (Wash. May 8, 2001) (No. 18709–8).

granted: (1) circumstances justifying equity's intervention must be present and (2) the claimant must diligently pursue his or her rights.[11]

A waiver is the intentional and voluntary relinquishment of a known right.[12] It may be express or inferred from circumstances indicating an intent to waive.[13] To constitute implied waiver, there must be unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors.[14] The party claiming waiver has burden to prove it.[15]

Longland claims the 16 months "falls well outside the general time requirements for asserting challenges found in the IIA," and that by continuing to pay benefits to Longland, Scotsman's conduct "put Longland at ease that the non-cooperation issue was behind him and that Scotsman did not intend to raise it again."

First, neither RCW 51.32.110 nor WAC 296-14-410 states a time within which the Department or the self-insured must act. Each only includes deadlines for the worker. Neither RCW 51.32.110 nor WAC 296-14-410 is ambiguous about a deadline for the Department or the self-insured to act on a worker's non-cooperation.

Second, after Longland failed to take the Compass test, his vocational counselor developed a security guard training plan, which Longland declined on September 25,

---

[11] Kingery v. Dep't of Labor & Indus., 132 Wn.2d 162, 177–78, 937 P.2d 565 (1997); Dep't of Labor & Indus. v. Fields Corp., 112 Wn. App. 450, 459–60, 45 P.3d 1121 (2002).
[12] Pellino v. Brink's Inc., 164 Wn. App. 668, 697, 267 P.3d 383 (2011) (citing to Jones v. Best, 134 Wn.2d 232, 241, 950 P.2d 1 (1998)).
[13] Pellino, 164 Wn. App. at 697 (citing to Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)).
[14] Pellino, 164 Wn. App. at 697 (citing Cent. Wash. Bank v. Mendelson–Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989)).
[15] Jones, 134 Wn.2d at 242.

2014. On November 25, 2014, Longland submitted to an Independent Medical Examination (IME) with Dr. Bryant Marchant for "evaluative purposes" nearly six months after his good cause response letter. Dr. Marchant found he was "relatively capable." His vocational counselor again tried to get Longland to reconsider his refusal to participate in security guard training on March 17, 2015. On March 26, 2015, Longland again declined. The record clearly shows that between the time Scotsman sent the non-cooperation letter and when the Department suspended his benefits, numerous attempts were made to assist Longland in vocational training. These ongoing efforts to help Longland contributed to the 16 month delay.

Finally, Longland fails to show the 16 month delay harmed him. He received benefit payments that he would not have received if the Department had suspended his benefits earlier. His only assertion is that the delay put him at "ease." Because Longland fails to show how the "circumstances [justify] equity's intervention" here, the first requirement for this court to grant equitable relief is not present. Scotsman did not waive its right to object to Longland's good cause explanation.

Formal Notice Requirements

Longland claims the trial court should have found the suspension order invalid because it did not comply with the mandatory formal notice requirements of RCW 51.32.110 and WAC 296-14-410. Specifically, he claims that if Scotsman believed Longland was non-cooperative at other points during the life of the claim, it had a duty to send a non-cooperation letter that described those too. He claims he was entitled to formal notice of these other allegations with the opportunity to explain his alleged non-cooperation in writing and that the BIIA and trial court erred in relying on these irrelevant

events.[16]

As stated above, WAC 296-14-410 requires that the Department or the self-insured must send a letter advising a worker that benefits may be suspended while asking for an explanation for the non-cooperation.[17] The worker has 30 days to provide a written response explaining the reasoning for non-cooperation.[18]

We find Longland's claim unpersuasive. His refusal to complete the 2014 Compass testing was not an isolated event. His failure to adequately provide substantive answers in the 2008 test affected his vocational plan and provided the basis for Scotsman to ask for a retest. Longland refused to complete the test but provided no medical evidence that he was unable to complete the Compass test in 2014. The non-cooperation letter stated he was "not cooperating with the request that [he] provide academic placement test information to [his] vocational counselor" and he was "required to fully participate and cooperate in the vocational assessment process."

Neither RCW 51.32.110 nor WAC 296-14-410 required Scotsman to list every instance of non-cooperation. But, Longland's prior acts of non-cooperation were relevant to explain the need for Compass test results in 2014. Without Longland's cooperation for security guard training and without any substantive helpful answers in the 2008 test, Scotsman needed new Compass test results to help Longland with vocational training.

Ultimately, in affirming the BIIA's decision, the court found that Longland did not establish good cause, within the meaning of RCW 51.32.110, for failing to comply with

---

[16] Longland asserts the same considerations were both irrelevant and required additional notices. Both contentions are analyzed together in this section even though they were asserted separately.
[17] WAC 296-14-410(4)(a).
[18] WAC 296-14-410(4)(b).

the Compass test as part of vocational training and that he refused or obstructed evaluation for purposes of vocational rehabilitation. Longland does not show Scotsman failed to follow formal notice requirements or that his earlier non-cooperation was irrelevant to the trial court's decision.

Good Cause

Longland next challenges the trial court's determination that he did not cooperate with the Compass test and did not act with good cause.

If a worker fails to show good cause for obstructing any evaluation, examination, treatment or practice as required, the self-insurer can suspend or deny compensation.[19]

Whether a worker has good cause to refuse to attend an IME is a mixed question of fact and law.[20] This court first reviews whether substantial evidence supports the superior court's factual findings and then determines, de novo, whether those factual findings support the superior court's legal conclusion that a worker did not have good cause.[21] The worker has the burden to demonstrate good cause for not appearing for a medical examination requested by a self-insured employer.[22]

Longland first asserts he was willing but unable to take the Compass test that he had taken it in 2008. The record does not support Longland's assertion.

First, the record shows that Longland was not willing to take the Compass test, even though the testing center staff member set up the test for him, showed him how to

---

[19] RCW 51.32.110.

[20] Garcia v. Dep't of Labor & Indus., 86 Wn. App. 748, 751, 939 P.2d 704 (1997).

[21] Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996); Garcia, 86 Wn. App. at 751.

[22] RCW 51.32.110(2); Andersen v. Dep't of Labor & Indus., 93 Wn. App. 60, 61, 967 P.2d 11 (1998).

use the mouse, and told him there was a tutorial. He left the testing center stating he could not do it. He entered his name but did not answer any questions. He could have asked for further assistance from the staff member but chose not to and left instead. Longland fails to show he made a good faith effort to take the computerized test.

Longland also admitted that from August 20, 2014 to August 20, 2015, no doctor provided an opinion that he could not participate in the vocational process. After Marchant conducted a November 2015 IME on Longland, he stated that Longland could have participated in vocational development from 2013 through December 21, 2015 including computer use. Besides his own statements, Longland fails to show he was unable to take the computerized Compass test.

Second, his statement that he was willing to complete the Compass test because he had completed it in 2008 is misleading. While he finished the test by hand in 2008, he failed to answer any questions in a meaningful way as his tests "bore similarly unproductive results."

Substantial evidence supports the trial court's conclusion of law that Longland failed to show good cause for failing to comply with the vocational testing.

Failure to Grant Continuance

Longland next claims the BIIA denied him his due process by refusing to grant him a continuance, and the trial court further abused its discretion in finding the BIIA did not abuse its discretion by denying a continuance.

We review constitutional claims de novo as questions of law.[23] But, we review a trial court's decision to grant or deny a request for continuance for abuse of

---

[23] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

discretion.[24] We use the same standard to review a trial court's decision to restrict counsel's argument.[25] A court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision upon untenable grounds or reasons.[26] A court bases its decision on untenable grounds or reasons when it applies the wrong legal standard or relies on unsupported facts.[27]

"[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court."[28] An appellate court will disturb a decision to deny a request for a continuance only if he or she shows that he or she was prejudiced or that the result would have likely been different had the motion been granted.[29] No mechanical test exists for determining "when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result."[30] The court must decide on a case-by-case basis.[31] Appellate courts look at the totality of the circumstances particularly the reasons presented to the judge at the time the request is denied.[32] In exercising its discretion, the court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted to the moving party;

---

[24] State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).
[25] State v. Perez–Cervantes, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000).
[26] State v. Gunderson, 181 Wn.2d 916, 921–22, 337 P.3d 1090 (2014).
[27] In re Det. of Duncan, 167 Wn.2d 398, 403, 219 P.3d 666 (2009).
[28] Downing, 151 Wn.2d at 272.
[29] State v. Eller, 84 Wn.2d 90, 95, 524 P.2d 242 (1974); State v. Tatum, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994); State v. Kelly, 32 Wn. App. 112, 114, 645 P.2d 1146 (1982).
[30] Eller, 84 Wn.2d at 96.
[31] Eller, 84 Wn.2d at 96.
[32] Kelly, 32 Wn. App. at 114-15.

any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.[33]

In accordance with Mathews v. Eldridge, we weigh the following factors to determine what process is due in a particular situation: (1) the private interest at stake in the governmental action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government interest, including the additional burdens that added procedural safeguards would entail.[34]

RCW 51.52.102 allows for a continuance of fact-finding hearings only to "a time and place certain." On November 16, 2016, during a phone conference between all the parties, Vail did not make a request to continue the proceedings to a time and place and expressed his plan to file a written notice of intent to withdraw as counsel. Judge Dannen did not grant a continuance on November 16, 2016. She scheduled the fact-finding hearing for March 9, 2017.

Longland claims that because he represented himself pro se, he had trouble understanding how to secure the witnesses necessary to defend his position. He also claims that the BIIA and the trial court faulted Longland for not making "relevancy objections" about "evidence of non-cooperation beyond just the Compass test." Finally, he claims he lacked basic understanding of the two claims addressed at the hearing.

Longland does not explain how he was prejudiced or how the result would have likely been different had the fact finding hearing been further delayed.

---

[33] Balandzich v. Demeroto, 10 Wn. App. 718, 721, 519 P.2d 994 (1974).
[34] 424 U.S. 319, 321, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Applying the Mathews factors, his claim is unpersuasive. While Longland had a property interest in his disability claim, the risk of erroneous deprivation by failing to grant the continuance was not high. He did not object to Vail's motion to withdrawal. And, he had approximately three months to obtain new counsel before the fact-finding hearings, which he failed to do.

Finally, the Department had a strong interest here in denying the continuance. Vail failed to request a specific time for the continuance as required by RCW 51.52.102. Without the ability or desire to grant an indefinite continuance, the Department had an interest in resolving the claim in a reasonable time-frame.

In reviewing the record and weighing the Mathews factors, we conclude that Longland's due process rights were not violated and that the trial court did not abuse its discretion here.

Longland's Request for Attorney Fees

Longland requests attorney fees "if the BIIA's decision and order are reversed or modified on appeal to the trial court or this Court" under RCW 51.52.130. Since we affirm, Longland is not entitled to attorney fees.

## CONCLUSION

We affirm. Scotsman informed Longland of his non-cooperation for failing to retake the Compass exam, and the BIIA and trial court affirmed the Department's suspension of his benefits for this reason. Substantial evidence supports the trial court's finding that Longland failed to show good cause when refusing to take the Compass test. Finally, his

due process right was not violated when his counsel failed to request a certain place and time for the continuance and was then denied a continuance.

Leach, J.

WE CONCUR:

Chun, J.